# Flannery *versus* Dechert.

13  505
133  640

It is not necessary that a contract should be signed by both parties; it may be good if signed by one only; the assent of the other may be inferred from his possession of the paper, and other circumstances.   The consideration of defendant's promise was a promise or implied agreement by the plaintiff to transfer the stock, which was the subject matter of the contract.

ERROR to the Common Pleas of *Berks county.*

This was an action of assumpsit by Henry Flannery, plaintiff in error, and plaintiff below, *vs.* Elijah Dechert.

This suit was instituted to recover from the defendant damages for refusing to accept a transfer of 51 shares of stock in the Berks County Bank, and pay for the same, according to the agreement of the parties.

February 23, 1848.   This cause being at issue and the jury sworn, the plaintiff, to maintain the issue on his part, gave in evidence a paper executed by the defendant, of which the following is a copy:

"I do hereby agree to take a transfer and purchase from Henry

[Flannery *v.* Dechert.]

Flannery, Esq., fifty one shares of stock in the Berks County Bank, at the par value thereof, including the interest due thereon, the principal sum to be paid in five years, and the interest due on the 1st of May to be then paid, and the interest afterwards annually.            ELIJAH DECHERT."

Sept. 23, A. D. 1842.

A power of attorney from Flannery to Mengel was produced, dated 10th June, 1843, authorizing Mengel to transfer the stock to Dechert.

*Mengel*, testified.—After this power was given to me, some two or three days, I met Mr. Dechert in Reading. I had this power and this paper, (referring to the paper dated 23rd September, 1842,) showed him this power, and stated Mr. Flannery wished me to make this transfer and receive the balance of interest ; (witness in repeating this said " balance of money due,") after making a deduction for a certain note in bank. Dechert said he was going to the city, and after he returned he would call on me and have the thing fixed. I was satisfied. I think I mentioned that Flannery had been up repeatedly and had left the power with me because he had not been able to see Mr. Dechert. My impression is, that Mr. Dechert was, at that time, President of the Bank. Mr. Dechert did not call on me on his return. I called several times at Dechert's office afterwards, and did not find him in, to have this matter fixed. My impression is that I saw Dechert in Reading after that, and before this suit was brought.

Another witness testified that Mr. Dechert was President of the Bank—that Flannery called at the bank in 1843, said he wanted to transact some stock business with Dechert—the latter was not there. In May, 1843, the stock was of no value in the opinion of the witness.

The court, JONES, President, charged the jury : .

The agreement, as it is called, on which the defendant is sued in this case, is reduced to writing, and there being no proof *aliunde* to add to it or to alter it, in any respect, it must be taken precisely as it stands.

To an agreement there must be the assent of two or more minds, and it ought to be so complete and certain that each party might have an aaction upon it.

The paper on which this action is founded, on its face does not appear to have received the assent of two minds—it is signed by the defendant and is in the possession of the plaintiff. That possession does not imply assent to its contents, nor is there any evidence in the case, express. or implied, of such assent.

It is a mere naked undertaking of the defendant to take a transfer and purchase certain stock from the plaintiff, at a certain price, and is so incomplete as an agreement that the plaintiff is not bound

to sell the stock nor to do any thing else for the non-performance of which the defendant here might have an action. The obligation insisted upon is entirely one-sided—there is no mutuality in it. There are many 'cases which establish the doctrine that if one party was not bound on his side to do the act, which forms the consideration for the promise or undertaking of the other, the agreement is void for want of mutuality; *Chitty on Contr.* 15; Payne *vs.* Ives, 3 *D. & R.* 664. The doctrine established by those authorities rules this case.

Reduced to writing and filed at request of the plaintiff, who excepted thereto.

Verdict for defendant.

Various errors were assigned—one of which was:

The court erred in their charge to the jury in instructing them that no suit could be sustained on the agreement given in evidence, and which was in possession of the plaintiff; and in saying there was no proof *aliunde* to add to or alter it in any respect; and in saying there was no evidence, express or implied, of the plaintiff's assent to the contract.

The case was argued by *Smith*, for Flannery, plaintiff in error. He argued *inter alia*, that the contract was executory, and that Flannery offered to perform.

*N. D. Strong*, contra.—The contract wants mutuality and consideration. Flannery was not bound to transfer the stock, if it had risen in value. The assent must be mutual, so that each party may have an action upon it; *Chitty on Contr.* 3. That the power of attorney to Mengel was dated in June, 1843, and that no offer was made to transfer, till the stock was worthless. The statement of Mengel, that Flannery had been up to transfer, was no evidence of the fact.

The opinion of the court was delivered by

COULTER, J.—It is not necessary that a contract should be signed by both parties; it may be good, although signed by only one. The assent of the other may be inferred from his possession of the paper or writing and other circumstances. In addition to the possession of the writing, the offer or tender to perform his implied part of the engagement, by transferring the stock at the time specified, was evidence that he assented to it.

Contracts to buy stock, or in the language of this paper to take and purchase stock on time, are common. And if A should agree in writing to take and purchase all the crop of wheat raised by B on his farm, in the harvest of 1850, at one dollar per bushel, and deliver the writing to B, and B should thresh his crop and

[Flannery *v.* Dechert.]

tender it to A, would he not be bound to take it or answer in damages. Flannery is in the same category, and why should he not recover, having kept the stock till the time, and then tendered and offered a transfer. It was not a naked contract. Flannery was bound to keep the stock for Dechert just as B, the farmer, was bound to keep his wheat for A. And if Flannery had sold his stock for a higher price, or refused to transfer upon tender of the consideration, he would have been liable in damages. One promise is often the consideration of another promise; and a promise may be implied from acts and circumstances. And who can resist the implication that Flannery agreed to transfer the stock that Dechert agreed to take and purchase, upon payment of the consideration. The consideration of Dechert's promise was a counter or equivalent promise or implied agreement to transfer. It was a case of mutual promises, and Flannery having tendered performance was entitled to this action for damages. It was not a naked or one-sided contract, to which nobody assented but one man. And that was the mistake of the court below.

Judgment reversed and *venire de novo* awarded.