# Wagenblast *versus* M'Kean et al.*

1. Where defendants have in their hands goods, with a right to a lien for a general balance, beyond the charges against the goods, it requires a tender and demand on the part of the plaintiff, as well as a refusal on the part of the defendants, to constitute a conversion.

2. Where defendants have goods in their possession, with no lien on them, except for freight and expenses, an offer to pay these, and a demand and refusal of the goods, is a sufficient evidence of a conversion.

3. Where a debt is due on a contract *executed*, and the party to whom it is payable, is entitled to it *without the performance of anything on his part*, and the object of the debtor is to discharge himself from an action for it, an *actual tender* is necessary, unless *dispensed with*, and the tender *must be pleaded* at an early stage of the case, and the *money be brought into court*.

4. Where the acts to be done by the parties are mutual, and to be performed at the same time, it is only necessary for the plaintiff to aver that he was *ready* and *willing* to *perform* his part.

5. In the case of a tender, the money must be offered *unconditionally*, and the offer is an acknowledgment that it is absolutely due.

6. Where a defendant holds goods, with a lien for charges and expenses, and the plaintiff offers to pay the same, and demands the goods, the defendant, to save himself from an action, is bound to state the amount of his claim, and offer to surrender the goods, upon its payment.

ERROR to the District Court of *Philadelphia.*

Trover for a quantity of wool.

Moss & Purdon, of Buenos Ayres, in South America, having funds in their hands belonging to the plaintiff, invested them for him in twenty-five bales of washed wool, which they shipped to

* This case was again in the Supreme Court, in 1854, as *M'Kean et al.* v. *Wagenblast*, for report of which, see *post.*

[Wagenblast *v.* M'Kean et al.]

defendants, for him, August 10, 1848. The wool arrived in New York about the beginning of November, 1848.

There had previously been disputes between plaintiff and defendants, as to the state of their accounts, defendants claiming of plaintiff a balance of $994.09, which claim was denied by plaintiff. On the arrival of the wool, the defendants informed plaintiff that if he did not pay this claim, they would sell the wool, and reimburse themselves. The plaintiff, thereupon, in the beginning of December, 1848, and before this suit was brought, sent to defendants, and demanded the wool, informing them at the same time, that he was prepared to pay the freight and expenses on it. Defendants, however, refused to deliver it, and said that the matter was in the hands of their counsel. They made no claim for any freight or expenses, nor did the plaintiff know the amount of the same, nor did it appear that any had been paid by them.

On the trial, the plaintiff proved property in the wool, with the demand and refusal above stated. He also gave in evidence, an account received from defendants, showing that the claim above referred to was partly a balance of cash, and the remainder a balance of an advance, under an agreement dated February 5, 1845, upon a shipment to Montevideo and Buenos Ayres, the proceeds of which were to be sent to defendants, but which did not appear to be in any way connected with the wool, and which was, in fact, a separate and distinct transaction. Plaintiff also showed that the wool was worth from $2000 to $3000. It also appeared, that on December 29, 1848, defendants sold the wool at auction.

Plaintiff having closed his case, the judge, on motion of defendants' counsel, entered a judgment of nonsuit. Plaintiff then moved the court in banc to set aside said judgment of nonsuit, and filed the following reasons therefor :—

1. Because the plaintiff proved property in the goods, for the conversion of which the action was brought; that they were in defendants' possession; and that before the suit was brought, defendants positively and absolutely refused to deliver them to plaintiff, although he was willing and offered to pay the defendants the freight and expenses on the goods.

2. Because the plaintiff proved a conversion of said goods by defendants, and their value at the time of conversion.

The court, however, refused to take off the nonsuit, to which plaintiff excepted, and the court sealed a bill of exceptions, according to the practice under the Act of Assembly, whereupon, plaintiff took this writ, and assigned the following errors :

1. The judge who tried the cause, erred in nonsuiting the plaintiff.

[Wagenblast *v.* M'Kean et al.]

2. The court below, in banc, erred in refusing to set aside said nonsuit.

*Markland*, for plaintiff in error.—That the goods belonged to the plaintiff, was without dispute. Defendants made no claim to them, but merely threatened to sell them, as a means of reimbursing themselves for an alleged balance due them by plaintiff. The only question was, whether there was any evidence of conversion. If there was any evidence, from which a jury could infer conversion, the judge erred in nonsuiting.

By the Act of March 11, 1836, sec. 7, under which this nonsuit is entered, it is only where the plaintiff has "given *no* such evidence, as in law is sufficient to maintain the action."

Where the nonsuit is granted, it is, in effect, like judgment for defendant on a demurrer to evidence. *Smith* v. *Cragg*, 3 W. & S. 18.

. If, therefore, there is the slightest evidence, on which the jury could find for the plaintiff, it is error for the court below to refuse to set aside the nonsuit. *Bevan* v. *Insurance Company*, 9 W. & S. 188.

Now, there was ample evidence of conversion here. There was a demand and refusal, and the goods were actually sold by defendants, and the proceeds appropriated in payment of an alleged debt, due them by plaintiff. Although the sale of the goods was not till after suit brought, yet the fact is evidence, as showing the intention of defendants in refusing to deliver them, when they were demanded by plaintiff.

If there is evidence of the conversion, though slight, the jury are the judges of the sufficiency. *Harger* v. *M'Mains*, 4 Watts, 418.

And as the object of defendants, in refusing to deliver, is shown to be a determination to keep the goods until paid their claim, the conversion was complete on their refusal to deliver.

A demand and refusal being proved, the jury ought to infer a conversion. *Jacoby* v. *Laussatt*, 6 S. & R. 305.

Even had there been any evidence, that the defendants had a lien on the goods, for freight and expenses, it would have been a question for the jury, whether their conduct did not amount to a waiver of tender.

If the party having a lien, makes no mention of it, or claims to retain it on a different ground, the demand and refusal, are evidence of conversion without tender. *Boardman* v. *Sill*, 1 Camp. 410, and note ; *Knight* v. *Harrison*, 2 Saund. Pl. & Ev. 641.

Where the party having the money offers to pay, and it is refused, such refusal dispenses with actual tender. *Appleton* v. *Donaldson*, 3 Barr, 383, 390.

[Wagenblast *v.* M'Kean et al.]

Tender is not necessary, if the party by his conduct dispenses with it. *Blight* v. *Ashley*, 1 P. C. C. 24.

But upon the evidence, the refusal to deliver here was not on account of any lien for freight and expenses, but in order to compel the payment of an alleged debt, and no tender of the freight and expenses was, therefore, necessary, even if defendants had a lien for them.

They had clearly no lien, for any balance which might be due on the advance, under the agreement of February 5, 1845.

No general lien exists, where the transaction shows the party to have trusted to personal credit or special security. Story, Ag. §§ 362, 378.

Nor did it appear that any part of their demand was, in any way, a lien upon the wool.

The burthen of proof is on him who claims the lien. Story, Ag. § 384.

There was, therefore, evidence to go to the jury, of a wrongful conversion by defendants of the goods of plaintiff, and the court below, consequently, erred in taking the question from them.

*Gerhard,* for defendants in error.—I return to the preliminary point of conversion. There was no actual conversion at the time of suit brought, as I have stated, and I proceed to inquire, if there was any evidence of a technical conversion. There certainly was no such evidence, unless this court will review a deliberate opinion, pronounced by itself, so lately as the 9th of February, 1852.

"The demand and refusal, are not alone evidence of conversion, unless it be first decided that there was no lien. If the lien be established, then it requires a tender, as well as demand and refusal, to constitute a conversion, for there is no right to demand until tender is made."

"The plaintiff's agents had invested the proceeds pledged to the defendants, together with the money of the plaintiff, in this wool, and sent all the wool to the defendants, who paid the charges and duties on the whole. This gave them an actual lien on the whole, for the amount of the charges and duties, *and for the amount of the proceeds of the consignment by the Brutus,* and on receiving the wool under such circumstances, they had a right to presume  *  *  *  that the whole was sent to them as a pledge, for all the money advanced by them on the engagement to pledge." Per Lowrie, J.

Now, there was no proof at all of a tender. Mr. Dickerson's testimony on this point was: "I stated to him, *if my memory serves me,* that I was *prepared to pay* the freight and expenses on the wool." Waiving this objection, however, for the moment, the testimony, even if admissible, is no proof at all of any tender.

[Wagenblast *v.* M'Kean et al.]

A man's *preparation to pay, is not* even *a preparation to tender*, still less is it a tender or its equivalent.

*Ryde* v. *Townsend*, 7 Dow. & R. 119.   *Money in hand, without an actual offer*, will not support a plea of tender.

*Thomas* v. *Evans*, 10 East, 101.   To make a legal tender, there must either be an actual offer of the money produced, or the production must be dispensed with by the express declaration of the creditor.   The case of *Finch* v. *Brook*, 1 Bing. N. C. 253, is exactly in point.   Great importance is attached to the production of the money, as the sight of it might tempt the creditor to yield, and accept it.   *Sheredine* v. *Gaul*, 2 Dallas, 190.   A mere offer to pay money, is not, in legal strictness, a tender.   *Dickerson* v. *Shee*, 4 Esp. c. 68; Cross on Liens, 46; *Scarf* v. *Morgan*, 4 M. & W. 273; *Dunham* v. *Jackson*, 6 Wend. 22; *White* v. *Gainer*, 2 Bing. 23.

The summary of the whole, then, is:

1. That at the time of suit brought, there was no actual conversion of the wool by the defendants.

2. That there has not been any proper demand made, (as I submit,) and if there has been, that it was unaccompanied by a tender of the defendants' lien on it, as this court held there should have been, nor any excuse or waiver of such a tender.

3. That even admitting a legal demand and refusal, the defendants had a right to dispose of the goods exactly as they have done, and appropriate the proceeds precisely as they have appropriated them.

The nonsuit, in every view of the case, was, therefore, rightfully granted.

The opinion of the court was delivered January 10, 1854, by

LEWIS, J.—When this cause was here before, there was evidence that the defendants below had a lien on the goods, for *all their advances*.   In view of that evidence, it was held, that "if the lien be established, then it requires a tender, as well as a demand and refusal, to constitute a conversion; for there is no right to demand, until tender is made."   But in the case as now presented, there is no evidence that the defendants had any lien on the goods, except for "freight and expenses on the wool," and these the plaintiff's agent proposed to pay, at the time he demanded the property.   Under this altered state of the facts, a demand and refusal were sufficient evidence of conversion, and the court should have enforced the law in that particular.   If the parties, on a new trial, choose to put a new face on their cause, it must be decided according to its new aspect, and not by the evidence given on the former trial.   The court cannot look back to that evidence in making up its decision.   The mo-

[Wagenblast *v.* M'Kean et al.]

tion for a nonsuit brings into consideration the evidence given on the new trial alone.

The bill of lading, and the amounts in which the defendants credited the plaintiff with the proceeds of the sales of the wool, and charged them with the freight and other expenses in relation to it, were sufficient evidence of the plaintiff's right of property. The plaintiff's acquiescence in the amounts might, under other circumstances, be evidence of the defendants' right to sell the goods, and retain the balance of the proceeds on their amount, for other advances. But the sale of the wool, after a solemn and formal demand of it by the owner, accompanied by an offer to pay freight and charges upon it, and after a suit was brought for it, in which the plaintiff was constantly asserting his right of property, and repudiating the claim of the defendants, is not evidence of the right of the latter so to dispose of the property. The suit pending was sufficient notice of the plaintiff's revocation of their authority to sell the wool, if any such had ever existed; and subsequently bringing the suit to a trial in due course of law, was sufficient to exclude any implication of acquiescence in the act of the defendants.

The plaintiff's agent, when he made a formal demand, stated that he was "*prepared* to pay freight and expenses on the wool." As this statement was not disputed, the jury might have inferred that he had the money with him for the purpose of making the payments. And as the defendants formally refused to deliver the property without stating the grounds upon which they claimed to hold it, but on the contrary, intimated an intention to maintain their position at law, and that they had employed counsel for the purpose, the jury might have found, from these circumstances, that they dispensed with the production of the money for freight and expenses. As the amount of these charges was exclusively within the knowledge of the defendants, the omission to state the sum claimed on this amount, and the absolute and general refusal to deliver the property, might, very properly, have been regarded by the jury as a dispensation. The case of *Finch* v. *Brook*, 1 Bing. N. C. 253, is, in some respect, like the one before us. In that case, as here, the attorney of the party stated that he had called on the plaintiff, to pay him a debt of £1 12s. 5d., which the defendant owed to him. He put his hand in his pocket for the purpose of taking out the money, but did not actually produce the same; whereupon, the plaintiff said: "I can't take it; the matter is now in the hands of Mr. Cooper," (the clerk of Mr. Cannon, his attorney.) In that case, it was held, by Tindall, C. J., and by Garcle and Vaughan, justices, that the jury, upon these facts, might have found for the defendant, on the ground of a dispensation; and had they found a dispensation, the court would not have interfered. If such

[Wagenblast *v.* M'Kean et al.]

circumstances would justify a jury in finding a dispensation in a case where an actual tender of the money, in the technical sense of the term, was required by law, they would be amply sufficient where no actual tender is necessary, and where a mere *readiness* and *willingness* to perform, is sufficient. Where a debt is due on a contract *executed*, and the party to whom it is payable is entitled to it *without the performance of anything on his part*, and the object of the debtor is to discharge himself from an action for it, an actual tender, in the legal sense of the word, is necessary unless dispensed with, and the tender must be pleaded at an early stage of the cause, and the money brought into court. But where the acts to be done by the parties are mutual, and to be performed at the same time, it is only necessary for the plaintiff to aver, that he was *ready* and *willing* to perform his part. 1 Chitty's Pl. 315, 318; 2 Id. 99; Dougl. 684; 1 East, 203; 2 Saund. 352, n. 3. In the case of *Rawson* v. *Johnson*, 1 East, 203, the question was fully considered, and the difference between a *tender* and a *readiness to perform*, recognised and explained. In the case of a tender, the money must be offered *unconditionally*, and the offer is an acknowledgment that it is absolutely due. But in the case of concurrent promises, or where it is payable upon the performance of some act by the opposite party, no such unconditional offer or tender is required. A party is not bound to part with his money, without the consideration upon which it was to be paid. Lord Kenyon's remark, that "in administering justice, we must not lose sight of common sense," and that where, in such a case, the defendant is unwilling to comply with his contract, it is " an useless ceremony to lay the money down and take it up again," is sound law. In an action on an agreement to deliver wheat at Ramsgate at a price named, the declaration averred that the plaintiff was *ready* at Ramsgate to *receive it*, and to *pay immediately after the receipt of the wheat*, but the defendant refused to deliver, &c., it was held good on demurrer. *Norwood* v. *Norwood & Read*, Plow. 180; Harne's Pleader, 131; Clift. 97, pl. 82. In the case of a tender, it must be kept good by bringing the money into court, and is pleaded with an averment of "*tout temps prist.*" But this is not necessary, where the object is merely to discharge the goods of the owner from a lien. In such a case, an offer to pay the money for which they are held as security, is sufficient to throw the *onus* on the party claiming to detain the goods. The latter is bound to state the amount of his claim, and to offer to surrender the goods upon payment. It is true that a difference in opinion in regard to the amount of the lien claimed, will not dispense with the production of the money for the sum actually due. 10 East, 101; 4 Mee. & W. 273; 6 Wend. 22. But where, as in this case, there was a refusal

[Alden et al. *v.* Bogart.]

in general terms to deliver the property to the owner, without assigning any reason for it whatever, such refusal might well be regarded as the assertion of an absolute right of property, which would certainly have dispensed with a tender. 1 Camp. 410, n.; 2 Bin. 23. But from what has been said, it will be perceived that the term *tender*, as frequently used, and as used when the case was here before, does not express with precision, the nature of the act to be performed by the plaintiff, to enable him to maintain the action. The cause ought to have gone to the jury.

Judgment reversed and <em>venire de novo</em> awarded.