## Carrier & Baum *versus* Dilworth.

1. Any alteration of a specialty by parol makes the whole parol, and covenant cannot be maintained on it; the terms of the specialty are adopted, and become part of the parol agreement.

2. The time stipulated in an agreement under seal for the delivery of goods was extended by parol. The whole agreement became parol, and the sealed contract was admissible in evidence.

3. Where assumpsit lies, and the amount sought to be recovered appears by writing under seal, such writing is admissible.

4. Where the time in a contract for delivery and purchase of goods was extended, the mutual promises of the parties to deliver and accept and pay were ample consideration for the new contract.

November 6th 1868. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., absent.

Error to the Court of Common Pleas of *Allegheny county:* No. 44, to October and November Term 1868.

This was an action of assumpsit by William Dilworth, Jr.,

[Carrier *v.* Dilworth.]

against John Carrier and A. F. Baum, trading as Baum & Co. The writ was issued March 13th 1868. The declaration, which was filed with the præcipe, set out *in totidem verbis* an agreement under seal, signed "Wm. Dilworth, Jr.," "A. F. Baum & Co.," dated February 27th 1862, by which Baum & Co. agreed to deliver to Dilworth, at his mill in Allegheny City, before the 1st day of June then next, 50,000 feet of good, sound, clean, merchantable timber, "one-third to be in lengths of 40 and 50 feet, the balance to be 20 to 40 feet lengths," and to give to Dilworth the refusal of 120,000 feet "to be of the same length and sizes of the above," &c. Dilworth to pay for the first lot 7 cents per foot in notes at four months, and for the second lot 7 cents per foot in notes at six months, "in case he decides to take the timber;" and that on the 8th of May 1862, the parties modified the agreement as follows:—

"This contract closed all except two rafts at the island marked 'C. B.,' containing 4643 and 3914 feet cubic, new timber; and four rafts containing two platforms, each long timber, to go double and upwards, yet to be delivered; said long timber to be forty and fifty feet lengths.

"A. F. Baum & Co."

The declaration then averred, that it was afterwards agreed by parol between the parties, that the defendants would deliver to the plaintiff in May 1862 "the said rafts and last-mentioned timber, containing 22,557 cubic feet good, sound, &c., timber," &c., of the lengths stated in the original agreement; and charging that the timber was not delivered.

At the trial before Mellon, J., by leave of the court, the plaintiff filed another count, in which he set out the original article of agreement and the modification as stated in the first count, and averred that in April 1863 it was agreed between the plaintiff and defendants, that the defendants would deliver to the plaintiff "two rafts containing 4643 and 3914 cubic feet of new timber, and four rafts containing two platforms each, in the month of April 1863, or spring of 1863;" and charging as breach the failure by the defendants to deliver the timber.

The plaintiff offered in evidence the agreement with the modification (which was endorsed on it), as set out in the *narr.* The defendants objected because it was under seal, and did not purport to be executed by the members of the firm. The offer was admitted, and a bill of exceptions sealed.

Graham Scott for the plaintiff testified, that the rafts had not been delivered: also, "during spring of 1863, about 1st April, Baum called at Dilworth's office. Plaintiff asked him, what about the six rafts to fill out the contract? He stated he had them coming down, and would deliver them. Dilworth was satisfied with that. These six rafts were to be paid for same as original

[Carrier *v.* Dilworth.]

contract, in four months from delivery. Dilworth was ready to receive and pay for them at any time."

The plaintiff then offered to prove what was the price in April 1863 of such timber as defendants were to deliver.

This was objected to by the defendants, on the ground that the breach occurred, if at all, in June 1862. The court admitted the offer, because if by consent of the parties the fulfilment of the contract had been kept open until the spring of 1863, that was the time when the breach occurred. A bill of exceptions was sealed for the defendants.

The plaintiff having given other evidence to sustain the issue on his part, rested. The defendants gave evidence in answer, and asked the court to charge :—

" 1. That the contract given in evidence in this case being under seal, and being executed by Baum alone, is not the covenant of John Carrier.

" 2. That the contract declared upon being under seal, this action of assumpsit cannot be maintained upon it.    *    *    *

" 5. That for a breach of this contract, if any breach shall be found by the jury, the measure of damages would be simply the difference between the contract-price of the timber and the market-price at the time when the breach occurred, which would be at the expiration of the time limited in the contract for performance thereof.

" 6. That the amended count to the declaration filed December 3d 1867, sets out no new contract made in April 1863, as there is no allegation of an agreement upon a sufficient consideration, on the part of defendants, to sell or deliver any amount of timber whatever. It, therefore, upon its face, sets out no cause of action."

The court charged :—

" This suit is for damages for breach of alleged contract by defendants to deliver timber to plaintiff. The defendants appear to have been partners in the business of getting out and running timber to this and other markets; the contract, therefore, if made, was within the scope of the business, and though made by but one of the partners would bind both. And this, notwithstanding it is in writing, and purports to be under seal. But this suit is not on the speciality—that is only used as evidence of the existence of the contract declared on. [There is another reason why the cause cannot be dismissed on that ground—if the contract was afterwards modified by parol; in that case the suit in its present form, is proper.]    *    *    *    *    *    *

" The 5th point is affirmed. This is the rule. [But you must find from the evidence when the time limited in the contract for delivery of the timber expired. For this purpose you must take written and parol evidence into consideration—for parties to a

[Carrier v. Dilworth.]

written contract may, by mutual consent, defer the time of performance, and whilst so deferred no breach occurs. There is some evidence in regard to that here.] Mr. Scott relates a conversation between Baum and the plaintiff in 1863, which would indicate that the contract was still open for performance, and delivery promised and expected. If Mr. Scott is not mistaken about the lumber to which that conversation related, it would tend to show the breach had not yet occurred. I would say, however, that it is only where expectation of performance has been kept up, and the time of it deferred by mutual consent, that a breach can be regarded as postponed beyond the time originally stipulated for performance.

"Under the foregoing answers on the subject of contracts, an answer to defendants' 6th point is unnecessary. We need not take time now to examine the amended count."

The verdict was for the plaintiff for $357.15.

The defendants sued out a writ of error. They assigned for error the admission of the offers in the bills of exception; the answers to their 1st, 2d and 5th points; neglecting to answer the 6th point, and the parts of the charge included in brackets.

*B. F. Lucas* (with whom were *A. G. Lucas* and *A. M. Brown*), for plaintiffs in error.—One partner cannot execute a deed for another: Gerard v. Basse, 1 Dallas 119; Hart v. Withers, 1 Penna. R. 285; Overton v. Tozer, 7 Watts 331; Henessy v. The Western Bank, 6 W. & S. 300; Snyder v. May, 7 Harris 235. In an action of assumpsit, a specialty cannot be given in evidence: Jordan v. Cooper, 3 S. & R. 580. There was no evidence of an extension of the time of delivery, and the fact should not have been submitted to the jury: Urkett v. Coryell, 5 W. & S. 60; Switland v. Holgate, 8 Watts 385; Hannay v. Stewart, 6 Id. 487; Kerr v. Wright, 1 Wright 196; Whitehill v. Wilson, 3 Penna. R. 405. The extension of time by parol was not such an alteration as brought the whole contract into parol: McCombs v. McKennan, 2 W. & S. 216; McGrann v. The N. Lebanon Railroad, 5 Casey 82. The court should have answered the 6th point: Shaeffer v. Landis, 1 S. & R. 449; Smith v. Thompson, 2 Id. 49; Noble v. McClintock, 6 W. & S. 58; Freeman v. Pennock, 3 Penna. R. 318, in note.

*Kirkpatrick & Mellon*, for defendant in error.—A partner may bind the firm by deed of its effects which might have been conveyed without deed: Story on Partnership, § 122; Randall v. Van Vechten, 19 Johns. 60; Vicary v. Moore, 2 Watts 456; Lawall v. Rader, 12 Harris 283; Ford v. Campbell, 6 Halstead 327. An agreement to extend the time for performance required no new consideration: Hill v. Smith, 34 Verm. (5 Shaw) 535.

The opinion of the court was delivered, January 4th 1869, by
SHARSWOOD, J.—The 1st error assigned is to the admission in
evidence of the agreement of February 27th 1862. This agree-
ment was under seal, and purported to be executed by one of the
members of a firm. The action was assumpsit, and both in the
original and the amended declaration the agreement in question
was set out, not as the cause of action, but as inducement to a
parol promise by the defendants to the plaintiff. Any alteration
of a specialty by parol makes the whole contract parol; covenant
cannot be maintained upon it; the terms of the specialty are in
effect adopted, and become a part of the parol agreement: Vicary
*v.* Moore, 2 Watts 451; Vaughn *v.* Ferris, 2 W. & S. 46. It
follows *ex necessitate* that the agreement under seal was admissi-
ble, to be followed, as it was, by evidence of an extension or
alteration by parol: Charles *v.* Scott, 1 S. & R. 294. Where an
action of assumpsit lies, and the amount which the plaintiff seeks
to recover appears by a writing under seal, said writing is admis-
sible: Mehaffy *v.* Share, 2 Penna. R. 361. If there was a new
contract by parol within the scope of the partnership, which was
a subsequent and distinct question in the cause, it mattered not
whether the agreement as originally executed bound the firm or
not.

The 2d error assigned is in admitting evidence of the price of
timber in April 1863. This was objected to, because the breach
of the agreement occurred, if at all, as early as June 1st 1862;
and that should therefore be the time at which the difference be-
tween the contract and the market price should be ascertained.
But Graham Scott had testified that "during the spring of 1863,
about April 1st, Baum called at Dilworth's office. Plaintiff asked
him what about the six rafts to fill out the contract. He stated
he had them coming down, and would deliver them. Dilworth
was satisfied with that. These six rafts were to be paid for, same
as original contract, in four months from delivery." This cer-
tainly was evidence for the jury that there had been a parol alter-
ation and extension of the original agreement, which was by its
terms to be performed June 1st 1862. The mutual promises of
the parties, the one to deliver and the other to accept and pay,
were ample consideration to sustain it as a new contract. The
learned judge would, therefore, have erred if he had ruled out
this evidence.

The 3d error assigned is to the answer to the defendant's 1st
point, " that the contract given in evidence in this case being ex-
ecuted by Baum alone, is not the covenant of John Carrier."
It is unnecessary to consider whether the answer is right, as the
point itself was immaterial and might have been declined. The
answer did the plaintiff in error no injury. The learned judge
himself, after expressing his opinion on the point presented, re-

[Carrier v. Dilworth.]

marked that the suit was not on the contract under seal, but on a separate and distinct agreement by word of mouth by Baum, one of the firm, to deliver at a subsequent day the rafts which had not been delivered under the original contract, at the price therein agreed on. Whether that contract was binding as within the scope of the partnership business, was another and different question.

Neither can the 4th assignment of error be sustained. The contract declared on was not under seal, but parol, though it referred to and incorporated with it a sealed writing. The action of assumpsit could therefore be maintained.

The 5th assignment is to the instruction that the jury must find from the evidence when the time limited in the contract for delivery of the timber expired. This may be considered in connection with the 6th assignment, that there was error in submitting to the jury whether there had been an extension of the contract, without evidence. I have already referred to the testimony of Graham Scott, and to one of the objections made to this testimony that it showed no consideration. As to the remaining exception taken to it, that it did not refer to the timber included in the written agreement, but to another lot, that surely was a pure question of fact to be responded to by the jurors, and not by the court.

The 7th error is disposed of by what has already been said on the 2d, and the 8th was to the refusal of the court to answer a point as to the sufficiency of the declaration, which had clearly nothing to do with the trial of the issue: Haldeman v. Martin, 10 Barr 369.

Judgment affirmed.