Bush *v.* Atlas Automobile Finance Corporation, Appellant.

Argued November 10, 1937.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*William Potter Davis, Jr.,* for appellant.

*Joseph C. Henry,* for appellee.

OPINION BY RHODES, J., December 17, 1937:

Plaintiff obtained a verdict against defendant in an action of assumpsit for breach of an alleged parol contract. Defendant's motions for judgment n. o. v. and new trial were dismissed by the court below, and judgment was entered on the verdict.

Defendant has appealed, and now contends: (1) That the parol agreement was without consideration; (2) that there was no proof that defendant's representative had authority to make the alleged parol agreement and bind defendant; and (3) that there was no requisite tender made by plaintiff to defendant.

The facts, when we view the testimony in the light most favorable to plaintiff, may be summarized as follows: On March 28, 1936, plaintiff obtained from defendant, on a written bailment lease, a second-hand automobile for a rental of $650. At the time of the execution of the lease by the respective parties, and on the delivery of the automobile to plaintiff, plaintiff paid defendant the sum of $300. The lease provided for payment of $5 per week for 52 weeks, beginning on the fourth day of April, 1936, and $90 the 53d week. The lease further provided that plaintiff should have the option to purchase the automobile at any time within 3 days after the expiration of the term of the lease, if the rental had been fully paid, upon the payment of the further sum of $1 to defendant, and that it would then execute and deliver to plaintiff a bill of sale.

On September 4, 1936, plaintiff had paid a total of $375, but owed rental totalling $35. On that date he drove the automobile to the office of defendant, where he had a conference with Morris S. Gross, who, as manager, had executed the bailment lease on behalf of defendant. It was orally agreed between them that plaintiff, at the request of Gross, was to leave the automobile in the custody of defendant; that plaintiff within a few days was to pay defendant the entire balance stipulated in the bailment lease to obtain title, to wit, $276; that plaintiff was then to have the automobile. Plaintiff thereupon voluntarily left the automobile and its accessories with defendant. He arranged to obtain the money to pay defendant through a loan from a bank. The ability and readiness of plaintiff to pay defendant the required sum was communicated to Gross, acting for defendant, on September 8th. On September 12th, Gross, when pressed by plaintiff's attorney to consummate the transaction as agreed, stated that he had changed his mind, and that he was not going to return the automobile, although admitting the parol agreement with plaintiff.

Defendant's position is that the alleged parol agreement is an agreement for an extension of time for making payments under the written bailment lease, and lacks validity for the reason that there was no consideration for defendant's promise. As we see it, the parol contract was a new contract of purchase and sale, and meets the requirements as to sufficiency of consideration. In *Presbyterian Board of Foreign Missions v. Smith,* 209 Pa. 361, at page 363, 58 A. 689, our Supreme Court said: "A test of good consideration is whether the promisee at the instance of the promisor, has done, forborne or undertaken to do anything real, or whether he has suffered any detriment or whether in return for the promise he has done something that he was not bound to do or has promised to do some act or has abstained from doing something." See *Mikos v. Kida et al.,* 314 Pa. 561, 172 A. 101.

When defendant promised, in effect, to sell the automobile to plaintiff for a certain sum, if plaintiff would voluntarily return the automobile to defendant, and the automobile was so returned and defendant's offer accepted by plaintiff, a new and valid contract was created between the parties. Defendant's oral promise to sell the automobile rested, at least, on plaintiff's oral promise to pay the agreed amount within a few days. See Restatement of the Law, Contracts, §75 et seq.; Williston on Contracts, vol. 1, c. 6; *Flannery v. Dechert,* 13 Pa. 505; *Carrier & Baum v. Dilworth,* 59 Pa. 406; *Flannery v. Wessels,* 244 Pa. 321, 90 A. 715.

We shall consider defendant's argument that there was no consideration for the parol agreement, as plaintiff only promised to do what he was obliged to do.[1] The written bailment lease provides as follows: "If the fair market value of the said motor vehicle when and if repossessed shall not be of such a value as to compen-

---

[1] See *Weigand v. Standard Motor Co.,* 109 Pa. Superior Ct. 256, 167 A. 493.

sate the Lessor for the balance of unpaid rentals, costs of suit and expenses of repossession then and in that event the said Lessor shall be permitted to proceed by execution for the collection of the balance (notwithstanding the repossession of said motor vehicle), for which the said Lessee expressly admits liability."

The lease, in defining the rights of the parties, does not contemplate repossession of the automobile by defendant and the recovery of the entire balance of unpaid rentals. In the event of repossession by defendant, plaintiff admits liability for a possible deficiency to be determined by the difference between the fair market value at the time of repossession and the balance of unpaid rentals, costs of suit, and expenses of repossession. For such difference, plaintiff, under the terms of the lease, has agreed to be liable. Cf. *Elliott, to use, v. Douglass,* 104 Pa. Superior Ct. 399, 402, 403, 159 A. 185. Defendant's testimony fixed the value of the automobile in September, 1936, at $375, and plaintiff's testimony at $500. Upon the voluntary delivery of the automobile at that time, by plaintiff, at the request of defendant, the legal relationship of bailor and bailee terminated, although, under the terms of the lease, plaintiff's further liability was dependent upon the fair market value of the automobile at the time of delivery to defendant. As the fair market value at the time was in an amount more than the balance of the unpaid rentals, it is apparent that there was no existing liability upon the part of plaintiff. He ceased to be either bound or obligated to defendant in any manner or in any amount. The parol contract between plaintiff and defendant for the purchase of the automobile for $276 did not involve any promise upon the part of plaintiff for which he was previously obligated. In other words, he was not obligated, under the lease, to defendant to pay the balance of $276, which, under the parol agreement, he agreed to pay.

There was ample proof that Gross acted within the scope of his agency in making the parol contract. Defendant's testimony was to the effect that Gross had no authority over repossessed accounts; that such authority was vested in William Brodsky, manager and secretary of defendant corporation; that Gross was only attorney for defendant and assistant manager in the office. Plaintiff's testimony showed that Gross signed all bailment leases as manager of defendant corporation; that the lease between plaintiff and defendant was executed in the following manner: "Atlas Auto Finance Corp. (Seal) Morris S. Gross Mgr."

The term "manager," as applied to an officer of a corporation, conveys the idea that the management of the affairs of the company has been committed to the one thus named, and one dealing with a person so held out may assume that his acts are authorized so long as they pertain to the ordinary business of the company. See 5 Words & Phrases (First Series) p. 4319.

The bank cashier and plaintiff's attorney were referred to Gross when they sought to take up with defendant plaintiff's alleged parol agreement with it; it was with him, as defendant's representative, they had their conversations. The cashier had advised Gross that plaintiff had arranged a loan from his bank to pay defendant the amount required to consummate the transaction. Plaintiff's attorney, when he called defendant's office relative to the transaction between plaintiff and defendant, talked to Gross, and to him Gross said: "Well, I changed my mind about it." In reply to the attorney's inquiry as to why defendant would not give up the car when it was receiving its money in full, Gross said: "Well, I am not going to do it. ...... How do you think we make money in the business?"

Clearly, the testimony warrants the conclusion that Gross' authority extended beyond that contended by defendant, and included the power to make the parol

contract on behalf of defendant. His authority so to act may fairly be inferred from the nature and scope of his employment. See *Bowman v. Press Publishing Co.,* 316 Pa. 531, 175 A. 483. Gross not only executed all leases as manager of defendant, but received the payments from customers on those leases, apparently had charge of defendant's office, and performed many of the essential duties requisite for the functioning of defendant's business as an automobile finance corporation. See Restatement of the Law, Agency, §34. His managerial position, the acts which he performed, and the authority which he openly exercised justify the jury's finding. See Restatement of the Law, Agency, §73. Defendant was bound by his parol contract on its behalf made within the apparent scope of his authority. See *Bayne v. Proctor & Gamble Distributing Co.,* 87 Pa. Superior Ct. 195; *Edwards et al. v. Power Gasoline Co.,* 109 Pa. Superior Ct. 252, 167 A. 487.

Defendant's final contention is that plaintiff is precluded from recovering in the absence of a valid tender. It is quite evident that this position is untenable. Plaintiff's ability and readiness to make full payment as agreed was communicated to defendant by both the cashier of the bank and the attorney acting on behalf of plaintiff. Defendant's refusal to comply with the terms of the parol agreement made a formal tender on the part of plaintiff unnecessary. The argument presented on behalf of defendant is entitled to little consideration in this connection. In its affidavit of defense defendant admitted that Gross stated to the attorney for plaintiff that "defendant would not return the automobile to plaintiff under any conditions." As this court said in *Bayne v. Proctor & Gamble Distributing Co.,* supra, at page 199: "It is true these paragraphs of the statement and affidavit of defense were not offered in evidence and were therefore not for the consideration of the jury; but appellant can hardly ques-

tion in this court what it has solemnly admitted under oath in the court below."

It is the rule that a vendor's refusal to perform excuses tender by the vendee as a condition precedent to a right of action. This principle has been repeatedly stated in a long line of decisions. See *Wagenblast v. M'Kean et al.*, 2 Grant 393; *Williams v. Bentley et al.*, 27 Pa. 294; *Douglas v. Hustead*, 216 Pa. 292, 65 A. 670; *Sisney v. Diffenderffer et al.*, 323 Pa. 337, 185 A. 830; *Schofield v. Schofield*, 124 Pa. Superior Ct. 469, 479, 189 A. 572.

Assignments of error are overruled.

Judgment is affirmed.