## Claire Construction Co. v. Gilbert Associates, Inc.

*Russel G. Weidner* and *Roland S. Grubb,* for plaintiff.

*Body, Muth, Rhoda & Stoud,* for defendants.

MAYS, P. J., March 5, 1956.—Plaintiff's complaint in equity seeks to restrain defendant from conveying certain checks and cash of Jeryl, Inc., to persons other than plaintiff. Preliminary objections to the complaint

were filed, whereupon plaintiff amended its bill seeking for an accounting on the theory that defendants were constructive trustees of the property of Jeryl, Inc., alleged to be in the possession of defendants.

Defendants' answer, admitting that it received certain moneys from Jeryl, Inc., denies that it was an escrow agent for Jeryl, Inc.

## Findings of Fact

1. Plaintiff, Claire Construction Company, Inc., is a Pennsylvania corporation and is engaged in construction work and has its principal office in Kennett Square, Chester County, Pa.

2. Defendant, Gilbert Associates, Inc., is a corporation engaged in management of construction prospects with offices at 412 Washington Street, Reading, Berks County, Pa.

3. Defendant, M. W. Smith, is an individual and at the time of filing the complaint in equity in this matter was the manager of the Industrial Plants Division of Gilbert Associates, Inc., and a resident of Berks County, Pa.

4. On August 15, 1952, plaintiff, acting by its secretary, entered into a contract with Jeryl, Inc., through its agent, Gilbert Associates, Inc., for the fitting of the principal's plant at Downingtown, Pa., for special manufacturing purposes.

5. The said contract consisted of a purchase order of six pages, incorporating therein certain specifications.

6. Said contract purchase order provided that itemized invoices be submitted monthly with receipted bills for materials purchased by plaintiff attached. Ninety percent payment to be made within 15 days after approval of invoice by engineer Gilbert Associates, Inc., and company Jeryl, Inc. Remaining 10 percent be paid upon completion and final acceptance of work.

7. Plaintiff began the work as provided by the contract promptly after its execution by furnishing labor and materials in revamping the said building for manufacturing purposes, and did render invoices with receipted bills of its suppliers attached thereto, but said invoices were not paid by Jeryl, Inc., in accordance with its contract.

8. On September 23, 1952, the said Jeryl, Inc., and J. Richard Laucks, its president, individually executed and delivered a judgment note in the sum of $20,000 to plaintiff as collateral security for payment of past due invoices of plaintiff.

9. Said note was entered of record in the judgment docket of the prothonotary of the Court of Common Pleas of Chester County on December 2, 1953, in book K-4, page 122.

10. After securing the aforesaid note from Jeryl, Inc., plaintiff resumed work under the contract and continued so to do during the months of October and November 1952 for which work invoices were forwarded to defendant, Gilbert Associates, Inc.

11. In December 1952, plaintiff stopped all work on the project because of the failure on the part of Jeryl, Inc., to make payment thereof as provided in the contract.

12. On January 20, 1953, at the invitation of defendant, M. W. Smith, acting for defendant Gilbert Associates, Inc., the parties thereto met at the offices of Gilbert Associates, Inc., in Reading, Pa., for the purpose of effecting a method of payment to plaintiff of the said overdue invoices and to work out a mutually satisfactory basis for the resumption of work on the project and assurance on the part of defendants that plaintiff would be paid for the balance of work necessary to complete the job.

13. Attending said meeting were defendant M. W. Smith, N. S. Danford, Mr. Caldren and Mr. Patton,

representing Gilbert Associates, Inc., and Benjamin Cohen and Leonard Pevar, officers of the Claire Construction Company, Inc.

14. At said meeting, plaintiff orally agreed with defendants to forward to M. W. Smith acting for defendant, Gilbert Associates, Inc., an order to satisfy its recorded judgment heretofore mentioned, in the sum of $20,000 and to forward its check drawn to the order of its suppliers on the project in the total sum of $4,967.05, which paid up all of its suppliers to November 30, 1952, except the 10 percent retained in accordance with said agreement.

15. At the same time and place, in consideration of said promises on the part of plaintiff, M. W. Smith, individually and acting for defendant, Gilbert Associates, Inc., orally agreed upon receipt of said satisfaction and checks to forward two checks of Jeryl, Inc., in his or its possession dated January 16, 1953, drawn to the order of plaintiff in the total sum of $11,432.28, and further to retain in his or its possession other certified checks of Jeryl, Inc., for the payment of the 10 percent of plaintiff's invoices withheld as provided in said contract, plus whatever additional funds necessary, after that, to complete the job.

16. At said meeting M. W. Smith, individually or acting for Gilbert Associates, Inc., refused the request of plaintiff to divulge the amount of the checks or funds he or it had in his or its possession stating: "You don't have to worry or be concerned about that. I'm telling you we have enough money to finish the job and pay up all bills, including 10% retained."

17. At the same time and place the said M. W. Smith as aforesaid advised plaintiff that he would stop plaintiff before having done more work than the amounts of the checks.

18. Plaintiff relied on the promises and representation of defendant, M. W. Smith, individually or

acting for defendant, Gilbert Associates, Inc., and forwarded to him or it an order to satisfy said $20,-000 judgment note and its checks drawn to its suppliers on the project in the total sum of $4,967.05 and resumed work on the project and completed it on or about March 10, 1953.

19. The said note of $20,000 was satisfied of record' in the prothonotary's office of the Chester County Court of Common Pleas by defendant, Gilbert Associates, Inc., on January 24, 1953, in accordance with said order forwarded to it by plaintiff and forwarded plaintiff's checks to its supplier as agreed.

20. On or about March 10, 1953, through its resident engineer, Mr. Caldren, plaintiff was ordered by defendant, Gilbert Associates, Inc., not to proceed with further work on the project which it had previously ordered to be done.

21. At about the same time plaintiff forwarded its final statement to defendants in the sum of $16,481.14.

22. On April 1, 1953, Gilbert Associates, Inc., by N. S. Danforth, forwarded a certified check made by Jeryl, Inc., dated January 16, 1953, and drawn to the order of plaintiff in the sum of $7,500, leaving a balance due and payable of $8,891.14.

23. On April 15, 1953, plaintiff, by letter addressed to defendant, Gilbert Associates, Inc., demanded payment of said balance.

24. On April 24, 1953, at the request of J. Richard Laucks, president of Jeryl, Inc., and without notice to plaintiff, M. W. Smith, individually or acting for Gilbert Associates, Inc., returned to said J. Richard Laucks a certified check of Jeryl, Inc., no. 60, drawn to the order of plaintiff in the sum of $5,316.47, which M. W. Smith had in his possession at the aforesaid meeting between the parties in Reading on January 20, 1953.

25. The said checks were delivered by J. Richard Laucks, president of Jeryl, Inc., to M. W. Smith, individually or acting for Gilbert Associates, Inc., to be held for plaintiff until such time as the bills of plaintiff were delivered.

26. On May 26, 1953, plaintiff caused to be filed in the Common Pleas Court of Chester County, Pa., an action of scire facias mechanic's lien against Jeryl, Inc., and secured judgment thereon on July 7, 1953, in the sum of $9,200.94.

27. Plaintiff had no knowledge of the return of the said check of Jeryl, Inc., in the sum of $5,316.47 to J. Richard Laucks, president of Jeryl, Inc., until on or about November 13, 1953, when defendants caused an answer to be filed to plaintiff's amended complaint as follows:

"13. Denied. The defendants deny that they are in ownership or possession of any check or cash of Jeryl, Inc., and aver that they have no checks or cash in their possession belonging to Jeryl, Inc. or the plaintiff."

### *Discussion*

On the part of defendant, there is really no denial that the officers of the plaintiff corporation met at the request of M. W. Smith, defendant's plant manager, at the office of Gilbert Associates, Inc., in Reading, Pa. At the time, Jeryl, Inc., and Gilbert Associates, Inc., had a contract dated August 15, 1952, for revamping of an industrial building at Downingtown, and for which Gilbert Associates were the engineers in charge of the work for Jeryl, Inc. Jeryl, Inc., became involved in financial difficulties and had failed to pay what was due and owing plaintiff company.

On September 23, 1952, Jeryl delivered its judgment note in the sum of $20,000 to plaintiff as security for the payments due, as an inducement for plaintiff to proceed with the work. At the last meeting, January, 20, 1953, defendant Smith, in an effort to

induce plaintiff to return to work, reported that he had in his possession the money to pay plaintiff for several months bills then owing to it. He definitely stated, and this, too, is uncontradicted, "I also have enough for you to complete the work". This statement was made after defendant Smith exhibited four checks of undisclosed amounts. Upon request of plaintiff, he refused to divulge the amount of the checks, declaring: "I will stop you before you have done more work than the amount of the checks are."

Instead of delivering to plaintiffs all of the checks as was agreed to, the last one was returned to Jeryl, Inc., on April 24, 1953. As appears from exhibit no. 11, this check was in the sum of $5,316.47. On April 15, 1953, plaintiff requested the balance due and payable to it. It was then that defendant Smith advised plaintiff by letter as follows:

"After receiving your letter of April 15, and subsequent telephone conversations pertaining to same, I, acting for and on behalf of Gilbert Associates, have determined that due to the inconsistencies (the lack of and misconstruing the facts) have made it advisable to return to Jeryl, Inc., certain checks and other papers pertaining to the subject project. This action on our part should make it very clear that you are to look to Jeryl, Inc., and not to Gilbert Associates for payment."

There are many other matters that could be referred to but it is sufficient to say that here there was an understanding by Gilbert Associates, acting and by Smith, their employe and agent, whereby certain moneys were impounded to be used for a certain and definite purpose. When plaintiff, after request from Smith, caused the $20,000 judgment to be satisfied, it was obligatory that the moneys earmarked for plaintiffs should not be returned to Jeryl, Inc., without the express approval of plaintiff. This was an obligation,

not only for Smith, but of his principal, Gilbert Associates, Inc., that they hold a definite amount of money which was to be paid not to Jeryl, Inc., but to plaintiff.

The question has been raised whether or not plaintiff has proceeded properly, i. e., whether or not they should have instituted an action at law against defendants. Being satisfied that the two defendants, jointly and severally, are liable as constructive trustees, plaintiff, having satisfactorily proven such an arrangement, has the right to see to it that what was agreed to was lived up to. Defendants, as already pointed out, were not entitled to withhold this check or the equivalent from plaintiff. Since they turned it over to someone else, plaintiff is entitled to the face of the check and to that extent at least, is entitled to relief. Where property has been diverted, the cestui que trust may either follow the fund or hold the trustee liable for the breach of trust: Freas' Estate, 231 Pa. 256.

### Conclusions of Law

1. Equity has jurisdiction of the subject matter and the parties to this proceeding.

2. The sum of $5,316.47, with interest, is impressed with a dry trust in the hands of defendants for the benefit of plaintiff.

3. Defendants to pay all costs.

And now to wit, March 5, 1956, the prothonotary is directed to enter a decree nisi in accordance with the foregoing decision and forthwith to give notice thereof to the parties or their counsel of record, sec. reg.

### Opinion sur Exceptions

MAYS, P. J., July 13, 1956.—The chancellor's decree is to the effect that the sum of $5,316.47 in the hands of defendants is impressed with a dry trust for the benefit of plaintiff. Many exceptions have been filed,

one by plaintiff alleging that conclusion of law no. 2, insofar as it relates to the amount of the dry trust, is not a proper one. At the argument this exception was withdrawn.

Defendants' exceptions are many. Defendants have correctly stated that they embrace two questions, i. e.:

1. Was the chancellor in error in finding as a fact that M. W. Smith was the agent of Gilbert Associates, Inc., in making arrangements for payment to the plaintiff?

2. Was the chancellor in error in finding as a conclusion of law that the sum of $5,316.47 with interest is impressed with a dry trust in the hands of defendants for the benefit of plaintiff?

### Relationship of the Parties

It is important that all parties who attended the meeting, January 25, 1953, be identified in their relation to each other, in order that reasonable inferences may be drawn as to whom, in fact, M. W. Smith was representing. It was Smith who initiated the meeting with plaintiff in an effort to work out a satisfactory solution to plaintiff's return to work on the Jeryl, Inc., job, on which the latter had engaged Gilbert Associates as its engineer. Smith was the manager of the industrial division of Gilbert Associates. The appellation "manager" thus applied is importantly significant.

"The term 'manager', as applied to an . . . representative of a corporation, implies that the management of the affairs of the corporation has been committed to him, in respect of the property and business under his charge, so that his acts in and about such business, so committed to him, are within the scope of his authority": 19 C. J. S., Corporations, §1002, citing Bush v. Atlas Auto. Finance Corp., 129 Pa. Superior Ct. 459.

"His powers and authority are broad and include implied authority. . . . The fact that he occupies the position of general or managing agent implies, without further proof, his authority to do anything that the corporation itself may do so long as the act done pertains to the ordinary business of the corporation": Ibid.

Jeryl, Inc., was financially embarrassed shortly after the execution of the contract in July 1952, and only by reason of the execution of the judgment note in September 1952, did plaintiff agree to continue on the project and, not being paid, withdraw. Smith, in order to get the job under way, which it was his duty to do, if reasonably possible, represented that if plaintiff gave up his judgment of $20,000 and returned to work, certain checks and cash of an undisclosed amount in his possession, would be paid to plaintiff and should certain funds in his possession become exhausted he, Smith, would stop plaintiff from incurring further liability with its subcontractor on the job. It was only through the progress and completion of the project that Gilbert Associates would be paid further fees for their services.

Surely it cannot be seriously contended that Smith was not engaged in furthering the interests of his company. In addition to Smith, Mr. Danford, Mr. Patton and Mr. Frank Caldren, other employes of Gilbert Associates, Inc., attended the meeting in an advisory capacity to Smith along with plaintiff. They met at the main office of defendant company, and it is reasonable to assume, in view of these and other circumstances accompanied by declarations of Smith, the manager, that he, Smith, was acting for his employer, defendant, who was the general superintendent in the construction of the Jeryl, Inc., building.

It is important to note that at the conclusion of the aforesaid meeting, plaintiff requested that the ar-

rangements agreed upon be set forth in writing, to which request Smith stated that this was not necessary. However, he, Smith, asked for a letter of confirmation from plaintiff. The day following, plaintiff, by letter addressed to M. W. Smith as manager of the industrial division of Gilbert Associates, Inc., to its office in Reading, Pa., confirmed the said arrangements, which letter was acted upon by Smith, in that checks were exchanged and the $20,000 judgment note of Jeryl, Inc., satisfied of record. The record contains no denial of these arrangements.

Gilbert Associates clothed Smith with the apparent management of this particular job, and surely he was empowered to expedite the work of defendant corporation and if the job became bogged down, it was their duty to confer with the parties in an effort to work out a solution of their difficulties. There were no difficulties between the owner and plaintiff except that of payment for work done and assurance of payment for future work on the contract. This Smith represented to plaintiff that he controlled. It was reasonable for plaintiff, under these circumstances, to conclude that Smith as agent for his employer, had authority to do what actually was done. Smith was without authority to surrender earmarked checks to J. Richard Lauckes, president of Jeryl, Inc. There was but one duty imposed upon him as agent for Gilbert Associates, as principal, and that is to turn over all that was deposited under the agreement to plaintiff. This was not done. Thus there is a breach of trust. Restatement of the Law of Trusts says:

"If the trustee commits a breach of trust, he is chargeable with (a) any loss or depreciation in value of the trust estate resulting from a breach of trust. . . ." Restatement of the Law of Trusts §205(a).

. ". . . a breach of duty by a trustee is a breach of correlative right of a beneficiary . . . as of the mo-

258

.ment of the breach of the trust . . . [he may] hold the trustee to account for trust property or funds diverted into the transaction . . . or he may pursue the trust res or its product or proceeds or seek restitution through damages recoverable from the trustee . . .": 54 Am. Jur., Trusts §570.

The restatement continues:

"If by the terms of the trust it is the duty of the trustee to pay or convey the trust property or any part thereof to a beneficiary, he is liable if he pays or conveys to a person who is neither the beneficiary nor one to whom the beneficiary or the court has authorized him to make such payment or conveyance": Restatement of the Law of Trusts §226.

Even though the payment was under a reasonable mistake of law or fact, if in doubt as to whom the money should be paid he should seek protection of the court.

Plaintiff having satisfactorily proven the trust and the arrangements thereunder, plaintiff surely has the right to see to it that what was agreed to was lived up to by the trustee.

And now, to wit, July 13, 1956, the exceptions are dismissed.