## Fink's Estate.   Hoon's Appeal.

[Marked to be reported.]

*Decedent's estate—Contract—Rescission—Evidence—Statute of limitations.*

Testator owned a house and lot worth about $700. About Sept. 1, 1884, he made and acknowledged a deed to his daughter for the property, and there was evidence that the deed was delivered. The daughter paid nothing for the conveyance, but it was the understanding that her father was to have a home with her for the remainder of his life, and this was the reason for the conveyance. Soon after, father and daughter determined to purchase a farm; so the daughter, the father being present and consulting with her, made a written contract with the owner of the farm for its purchase at the price of $3,650. The daughter paid in hand only $25.00. The deed was to be made on April 1, 1885. It was understood and agreed between father and daughter that the house conveyed to the daughter should be sold, and the purchase money applied in part payment of the farm. The remainder was to be paid directly by the father. On Nov. 29, 1884, the daughter sold the house for $700, receiving from the purchaser $5.00 hand money, which she gave to her father. Afterwards she surrendered the deed to her father, which had not been recorded. On Jan. 10, 1885, the father and daughter quarreled, and at the request of his daughter he left the house not to return. No reconciliation ever took place between them. On April 1, 1885, the father conveyed the house to the purchaser, taking a mortgage for $650, which was paid to him as the mortgage matured. The daughter having paid no part of the remaining purchase money on the farm, the father on April 3, 1885, paid it and took the deed in his own name. Subsequently, in 1887, he sold the farm and received the purchase money. By his will he cut his daughter off with one dollar and fifty cents. On June 22, 1891, the daughter claimed to recover from his estate $650 purchase money of the house, and $25.00 hand money paid

by her on the farm.   *Held*, (1) that as the daughter wholly failed to perform the service which was the consideration for the deed, she was not entitled to recover the purchase money of the house; and (2) that the claim for the hand money was barred by the statute of limitations.

Argued April 24, 1893.   Appeal, No. 22, July T., 1892, by Adaline Hoon, legatee, from O. C. Cumberland Co., overruling exceptions to auditor's report, on account of Jacob A. Smith, executor of William Fink, deceased.   Before WILLIAMS, MC-COLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Exceptions to report of auditor on distribution of decedent's estate.   Before SADLER, P. J.

The auditor, A. G. Miller, Esq., reported as follows:

" 1.  Wm. Fink, the testator, died Sept. 12, 1890.

" [2.  During his lifetime he was seized in fee of a house and lot of ground in the borough of Shiremanstown, in this county, for which he executed and delivered, between April and September, 1884, a deed to his daughter Mrs. Catharine Weaver. This deed recited a consideration of $200, but this sum was never paid by Mrs. Weaver to her father.   The real consideration for the conveyance was that she was to maintain her father for life, he being then a feeble old man 84 years of age, and having gone to reside with his daughter, Mrs. Weaver, on the Shelly farm, on or about the 1st of September, 1884.] [3]

" [3.  About this same time, to wit: September, 1884, the parties to this arrangement thought that a property located in Monroe township, near Williams' Grove, belonging to Mrs. Mandella Smyser, would be more desirable than the Shiremanstown property, and, at the instance of Mr. William Fink, his daughter, Mrs. Weaver, entered into an article of agreement with Mrs. Smyser for the purchase and sale of said property, the understanding being that Mrs. Weaver was to pay $650 and Mr. Fink $3,000 of the purchase money, and she was to keep and maintain him for life.   After the purchase of the Smyser property, Mrs. Weaver surrendered to her father the deed for the Shiremanstown property without making any claim for it or upon it, which property Mr. Fink subsequently conveyed to Christian Myers, by deed dated the 1st day of April, 1885, for $700, taking a mortgage in his own name for $650, the balance of the purchase money.] [4]

" [4. In January, 1885, Mrs. Weaver and her father, Mr. Fink, having disagreed, he leaving her house at the request of Mrs. Weaver and her husband, George Weaver, (who was then already indebted to Mr. Fink in the sum of $1,100,) and they declining to pay the $650 of the purchase money or pay five per cent interest for the money Mr. Fink was to advance, and having refused repeated offers of settlement and compromise offered by Mr. Fink, he then determined to pay for the whole of the property himself, and took the title in his own name, which he did on the 3d day of April, 1885, at the office of E. B. Watts, Esq.] [5]

" 5. The auditor further finds that no contract relation existed between Mrs. Weaver and the testator, that she was to be paid for any services. Her remuneration was to be paid, if at all, by coming through the purchase of the Smyser property, as a home for the Weavers and Mr. Fink, on condition that Mrs. Weaver was to pay $650 of the purchase money and maintain him (Fink) during life, which was to be the equivalent of five per cent on the balance of the purchase money, to wit: $3,000, which she and her husband refused to accept or enter into as a contract.

" 6. Whatever default there was in the transactions between Mrs. Weaver and Mr. Fink was on the part of Mrs. Weaver.

" 7. Mr. Weaver had never entered into possession of either the Shiremanstown or Smyser property.

" 8. There is no evidence that this claim was ever made by Mrs. Weaver, before it was presented to the auditor.

" [9. Whatever contract she may have had with the testator was six years old on the 3d day of April, 1891.] [6]

" [1. Under the facts found by the auditor in this case, the testator was not indebted to Mrs. Catharine Weaver, and her claim is therefore disallowed.] [7]

" [2. The claim of Mrs. Catharine Weaver, if insisted upon as a contract debt, is barred by the statute of limitations: [8] Yorks' Appeal, 110 Pa. 69; Chapman's Appeal, 122 Pa. 331; Keyser's Appeal, 124 Pa. 80.]

" 3. If it is contended that a trust was created in her favor, then it is barred by the act of assembly approved the 22d day of April, 1856, P. L. 532; Purdon's Digest, page 1064, pl. 14."

Exceptions to the findings by the auditor, as in brackets,

were sustained by the court in the following opinion by SAD-LER, P. J. :

" [1. It was clearly established before the auditor, by the testimony of competent witnesses, that in the year 1884, William Fink made a deed conveying a house and lot of ground, in the borough of Shiremanstown, to his daughter Catharine Weaver, which deed was subsequently delivered to her. Afterwards he concluded that it would be desirable to purchase a property belonging to Mrs. Smyser situated near Williams' Grove in this county, and to have his daughter and her husband remove thereto, and for him to reside with them for the remainder of his life. He proposed that if Mrs. Weaver would sell the Shiremanstown property, which he had conveyed to her, and apply the proceeds to the purchase of the Smyser land, he would furnish the remainder of the money needed to acquire it. Mrs. Weaver consented to this arrangement and accompanied her father to Mrs. Smyser's, with whom she entered into a written contract for the purchase of the property of said Mrs. Smyser. The price agreed upon was $3,650, and Mrs. Weaver paid $25.00 of this on the signing of the agreement. The deed was to be made to her on April 1st following. After the execution of this contract, Mrs. Weaver on the 29th day of November, 1884, sold the Shiremanstown lot to Christian Myers, for seven hundred dollars. On the written agreement entered into between them Myers paid $5.00. This she handed to her father for the purpose of having it applied to the payment of the consideration money of the Smyser land. She subsequently delivered to him the deed which he had given her for the Shiremanstown property.] [9]

" A quarrel thereafter took place between Mr. Fink and his daughter and her husband. The former then refused to carry out the agreement made about the purchase of the Smyser property, but had the conveyance of it made to himself in the spring of 1885. On the first day of April of that year, he also conveyed the Shiremanstown property to Christian Myers, and took in part payment therefor a mortgage of the latter for $650.

" Two years after this he sold the Smyser land to Jacob Renecker, and on the 12th day of September, 1890, died, after having made his last will and testament, by which he appointed Jacob

A. Smith his executor. It was contended before the auditor on part of Mrs. Weaver that under the testimony 'he should have found that the proceeds of the Shiremanstown property were invested in that bought from Mrs. Smyser, and that Wm. Fink, the testator, held it in trust for Mrs. Weaver to the extent that the Shiremanstown property sold for.'

" In so far as the testimony taken before the auditor shows, the only money belonging to Mrs. Weaver, which was invested in the Smyser property, was the $25.00 she paid on the agreement. It does not appear that any part of the money derived by Wm. Fink from the sale of the Shiremanstown property was so invested. It is true Mrs. Weaver gave her father the $5.00 paid on the agreement between her and Myers, and that, as the mortgage which Myers gave on April 1, 1885, was for but $650, the inference would be that he paid $45.00 in cash at the time. But it was not shown who received the $45.00, nor that either this sum nor the $5.00 were invested in the Smyser land. Before the time of the conveyance by Mrs. Smyser to Fink he had repudiated the arrangement made with his daughter in the fall of 1884, and avowed his purpose to take the title to himself. As to these $50.00, the statute of limitations, interposed before the auditor, would bar the claim of Mrs. Weaver in any event. At the death of Mr. Fink there was due on the mortgage of Myers as appears by the inventory $550 of the principal debt, and accrued interest $16.13. When the difference between this sum and the amount for which the mortgage was originally given was paid or to whom does not appear. No portion was payable before April 1, 1886. It was payable to Mr. Fink and the presumption is that it was received by him. Indeed the contrary does not seem to have been averred before the auditor.

" The claim of Mrs. Weaver was presented to the auditor 22d June, 1891, less than six years after the first installment of the mortgage became payable.

" The Smyser land was conveyed to Renecker on April 1, 1887. The mortgage bore interest at five per cent.

" [Adaline Hoon, the daughter of William Fink, and a residuary legatee and devisee under his will, was not a competent witness against the claim of Mrs. Weaver,] [1] [nor the declarations made by William Fink as testified to by Christian Myers and Jacob A. Smith.] [2]

" [The house and lot in Shiremanstown being the property of Catharine Weaver, and the deed which she had received from her father having been redelivered to him in order that he might make the conveyance to Myers and that the proceeds should be invested in the Smyser land, and the testator having failed to so apply the proceeds, his estate must account for all that he received therefrom within six years of the time that Mrs. Weaver presented her claim before the auditor. The first installment of interest, $32.50, was payable April 1, 1886—to this she is entitled—to the one hundred dollars which has been paid on the principal of the mortgage as well as the interest which accrued and had evidently been paid to the testator during his life, and also the unpaid part of the mortgage, $550, and the interest which has been paid or accrued since that date.

" She is also entitled to recover the $25.00 which was invested by her in the Smyser property. This should bear interest from the time the land was conveyed by Fink to Renecker, April 1, 1887. Mrs. Weaver could have demanded to have the mortgage of Myers specifically, but as she elects to claim as a creditor we will treat her as such. A liberal settlement toward the estate will be to award her $650, with interest at five per cent from April 1, 1885, to April 1, 1891, in addition to the $25.00 invested in the Smyser property above referred to, in all $876, and distribution will be reformed accordingly.] [10]

" And now, March 25, 1892, the scheme of distribution prepared by the auditor will be modified in accordance with the foregoing opinion, and the accountant, Jacob A. Smith, is ordered to pay out the balance in his hands in accordance with the scheme of distribution appended. The exceptions filed to the report of the auditor are disposed of as above set forth."

*Errors assigned* were among others (1–10) in not sustaining the findings of fact by the auditor as in brackets, and in the portions of the opinion of the court as above, and (11) decree.

*J. W. Wetzel* and *M. C. Herman*, for appellant.—When the conclusions of an auditor and of the court below are widely different, the Supreme Court, while giving the auditor's report that weight to which it is entitled in itself, will determine which view of the case best accords with the facts exhibited in the

proof and the law has declared in similar cases : Fahnestock's Ap., 104 Pa. 46 ; Gilpin's Est., 138 Pa. 143.

The evidence nowhere sustains the finding that the conveyance was an absolute gift, disassociated with the idea of a contract that his daughter was to keep him for life or give him a home.

If the daughter in fact owned the Shiremanstown property and her father sold it on April 1, 1885, and appropriated the proceeds, whether in cash or in mortgage, her right accrued with the act of appropriation and not the maturing of the mortgage.   Therefore her claim as a creditor was too late.

*John Hays*, for appellee.—Decedent gave a deed to his daughter for the Shiremanstown property ; it was sold in order to put the money into the Williams' Grove property.

The rulings on the evidence did appellant no harm, as the evidence in support of the finding of the court was overwhelming.

OPINION BY MR. JUSTICE DEAN, October 2, 1893 :

William Fink, the testator, died September 12, 1890.   He left an estate of over $4,500, which he directed to be divided equally among eight of his children and their descendants, practically excluding from participation a ninth child, Catharine Weaver, this appellee.

In view of the relations existing between this father and daughter for some years before his death, the reason for thus cutting her off with one dollar and fifty cents is not hard to see.   The testator had been in feeble health for some years ; his wife, the mother of these children, had long been dead.   It is the not very rare case of an old man, changeable in mind, and very sensitive to real or imaginary neglect or unkindness on part of his children.

The testator, in September, 1884, showed a decided partiality for his daughter Catharine, and from his conduct towards her, and what he said concerning her, one would have been led to infer she would be the favored beneficiary in the distribution of his estate.

But having made his home with this daughter and her husband for a period of four months, by her command he leaves

her house, and, with expressions of bitter resentment, makes his will and gives her nothing.

The first thought in the minds of those who have no interest in the matter is, that this old man treated his daughter unjustly, and their inclination is to make a will for him which will do justice according to their notions; ignoring or forgetting the fact that the property belonged wholly to the testator to dispose of as suited his inclinations, for there was no question as to his mental capacity, and no allegation of undue influence. So the will must stand. But, smarting under a supposed wrong, it occurs to the disappointed child there is another way of defeating the intention of the testator to exclude her; if she can show an indebtedness to her on part of the father, equal to about the share she expected, justice will be done. If the law can be invoked to award her the amount of her claim, that will practically reform the will. The difficulty about such a method of equalization, is satisfactory proof of the indebtedness. The auditor finds there was no such indebtedness, the court that there was. What is the proof?

The testator owned a house and lot in Shiremanstown, worth about $700; about the 1st of September, 1884, he made out and acknowledged a deed to Catharine for this property, and there is some evidence that it was delivered to her; she paid nothing for it; it was the understanding of both father and daughter, that he was to have a home with her the remainder of his life, and this was the reason for the conveyance. Very soon after, they thought it desirable to purchase a farm called the Smyser farm in Monroe township; so the daughter, the father being present and consulting with her, made a written contract with the owner for its purchase at the price of $3,650; the daughter paid in hand only $25.00; the deed was to be made the 1st of April, 1885. It was understood and agreed, between father and daughter, that the Shiremanstown property should now be sold, and the purchase money applied in part payment of the farm; the remainder was to be paid directly by the father. The daughter, on the 29th of November, 1884, did sell the Shiremanstown property to Christian Myers for $700, he paying to her $5.00 of the purchase money, which she handed to her father; afterwards, she surrendered to him the deed which he had before made to her, and which had not been re-

corded.   The legal title of record being still in the father, he,
on the 1st of April, 1885, conveyed it to Myers, the purchaser,
taking from him a mortgage to himself for $650, the unpaid
purchase money, which was paid to him as the mortgage ma-
tured.   On the 10th of January previous, however, the father
and daughter quarreled, and, at the request of herself and
husband, he left the house not to return.   Although there were
repeated efforts to that end on part of the father and others.
of the family, there was no reconciliation, and the estrange-
ment continued until his death, nearly six years afterwards.
Because of inability to do so, the daughter paid no part of the
remaining purchase money on the Smyser farm, and absolutely
refused to have anything further to do with the transaction.
So the father, on the 3d of April, 1885, paid the whole of the
unpaid purchase money himself, and took the deed in his own
name.   Two years afterwards, he sold and conveyed it to Ja-
cob Renecker, and received the purchase money.

It will be noticed that the father, as to both properties, con-
veyed the legal title, and received the purchase money.

On these facts, the daughter claimed before the auditor so
much of the purchase money of the Shiremanstown property,
with interest, as was represented by the mortgage.   The au-
ditor found :  (1) There was no contract, express or implied, be-
tween the daughter and father, which would sustain the claim
for the purchase money.   (2) If there were such contract, the
claim was barred by the statute of limitations.

The learned judge of the orphans' court, on exceptions, set
aside the report of the auditor, holding :  (1) The Shiremanstown
property, by the deed from the father, became absolutely the
daughter's.   (2) That she re-delivered the deed to him on the
understanding it should be sold, and the purchase money be
paid on the Smyser farm, which was not done ; therefore the
father's estate should be answerable to her for the money.
(3) That the statute of limitations was no bar to her claim, for
although more than six years had elapsed from the date of the
conveyance of the property to Myers, yet it was less than six
years from the dates the installments of the mortgage became
payable, and that the statute only commenced to run against
her from these dates.

The court therefore awarded her the amount of mortgage, . . . . . . . . $650.00
Interest from April 1st, 1885, to April 1st, 1891,   195.00
Hand money on Smyser farm,   . . .   25.00
Interest from April 1st, 1887, to April 1st, 1891,   6.00

Total,                    $876.00

The legal conclusion of the court is based on the fact, that the Shiremanstown property was absolutely the daughter's, and, as the father received the price of it, his estate must account for the price as money received to her use. Assuming that the evidence shows the delivery of the deed to her, which was not recorded, and then returned to the father, with the distinct agreement between them that the property was to be conveyed by the father, as if no conveyance had ever been made by him to her, and that the purchase money was to be applied in part payment of the Smyser farm, then this, as between themselves, was a rescission of the contract of conveyance.

It is not material to inquire whether such a course of conduct is effectual, in general, to work the rescission of a deed as against an objecting grantee. The daughter here affirms the complete rescission of the conveyance by asserting her right to the purchase money. Her claim, then, to the money, in equity, must depend on the nature of the transaction.

It is admitted she paid nothing for this deed; it was made to her by the father on the agreement or understanding he was to have his home with her the remainder of his life; he lived six years afterwards, but, with the exception of the first four months, did not have his home with her, and this, because she peremptorily dismissed him from it. The fact that, by the agreement of both, it was thought best to purchase the Smyser farm and make that the home, and the purchase money of the Shiremanstown property was to be put into it, was no essential change in purpose of either, and no payment by her of the consideration for the deed. It imposed upon the father the contribution of a much larger amount of money, but that was all; he had appropriated for the understood purpose a property worth $700; now he consents to appropriate for the same purpose one worth $3,600; but as the first, in view of the purpose, could no longer be of service, it was sold to lessen the amount

of money necessary to be raised by him for the purchase of the second. Before the home was established as contemplated by both on the Smyser farm, the unfortunate quarrel took place. It appeared the father had already loaned his daughter's husband $1,100, for which he had taken no security, and which the husband was unable to pay ; the father complained of this ; but it is not important to extend the inquiry into the cause of the estrangement; probably neither side was blameless. The established fact remains, that the daughter wholly failed to perform the service which was the consideration of the deed ; she gave the father no home on the Smyser farm or elsewhere.

As this consideration was not a covenant in the instrument, had she stood on her deed and refused to surrender it, whatever might have been the remedy of the father for her refusal to give him a home, the property would have remained hers absolutely ; but, voluntarily, she gave back to the father what she was to get, and never gave him what he was to get, a home in his declining years. Where is the room to recognize in equity or at law any indebtedness on part of the father under such circumstances? Thereafter, both were in precisely the situation as before the deed was made to her. And so she must have understood it; for during the nearly six years of his life, after the sale of the property to Myers, she made no claim for any part of the purchase money. The whole of the testimony, taken in connection with her conduct, conclusively shows that the claim for the purchase money of the Shiremanstown property is an afterthought prompted by disappointment in the distribution made by the father's will. Having wholly failed to sustain her claim, it cannot be allowed.

As to the $25.00 paid by the daughter on the purchase of the Smyser farm, the payment was made in September, 1884 ; on the 3d of April, 1885, the father took a conveyance of this land from Mrs. Smyser in his own name ; at that date, if not sooner, her right of action for money paid to the father's use accrued ; her claim was presented before the auditor June 22, 1891 ; the auditor held it was barred by the statute of limitations ; under Yorks's Ap., 110 Pa. 69, and the line of authorities following it, he was clearly right. The court below sustained her claim to this sum on the theory that the money was received by the father to her use, when he conveyed the farm to Renecker in

1887, and that the daughter had no right of action until then. But this is a mistake; the appropriation of her money to his use, was when, by a distinct unequivocal act of appropriation, he took to himself the title to the land on which it had been paid ; he then had possession practically of her money, because he took the exclusive benefit and enjoyment of the farm. From that date there was an implied contract on his part to repay, and a right in her to demand. As this was more than six years before she presented her claim, her right of action is barred.

It follows from what we have said that the learned court erred in setting aside the report of the auditor; therefore, the appeal is sustained ; the decree of the orphans' court is reversed and set aside at costs of appellee ; the report of the auditor is confirmed absolutely, and the record is remitted to be proceeded in accordingly.

[Marked to be reported.]