# Douglas *v.* Hustead, Appellant.

*Vendor and vendee—Option—Principal and agent—Defeat of option—Tender.*

Where the agent of a vendor wrongfully refuses to deliver a deed to the vendee on the final day for the declaration of an option, and it appears that the vendee is ready and willing on that day to take the land, the vendor cannot take advantage of his agent's misconduct or mistake; nor is anyone having a second or a top option with a knowledge of the previous one in any better position. The vendee in such a case is not required to make a formal tender of the money after the agent of the vendor has declared that he will not deliver the deed.

Where acts to be done by the parties are mutual and to be performed at the same time, it is only necessary for the plaintiff to aver that he was ready and willing to perform his part.

Argued Oct 15, 1906. Appeal, No. 40, Oct. T., 1906, by defendants, from judgment of C. P. Greene Co., Feb. T., 1902, No. 33, on verdict for plaintiff in case of John S. Douglas v. James M. Hustead et al. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Ejectment for land in Greene township. Before CRAW-FORD, P. J.

The facts are stated in the opinion of the Supreme Court.

The court charged in part as follows:

[You have learned, gentlemen of the jury, that if this second option was taken subject to the first, which seems to have been admitted here, and the parties who took this coal had notice of the option held by Mr. Douglas, it would be subject to that, and their rights would be subservient to whatever rights Douglas had, provided any rights accrued to him under his contract. These facts I take it are practically undisputed.] [1]

[As I recall Mr. Roby's testimony, it was his understanding, when he inclosed his paper to Mr. Douglas, that Mr. Douglas was to close up with whoever he succeeded in selling the coal to. The matter is just this, gentlemen of the jury, if that was the agreement of the parties and they afterwards incorporated that in the option by parol, by agreeing to transfer the coal in that way, by the parties mentioned, and you are satis-

fied these steps were taken with the knowledge and consent on the part of Mr. Roby and Mr. Henderson, as I take it, they would be bound here by the transaction as it occurred, because Mr. Kyle's employment as attorney or agent would operate just as firmly against them as anybody.] [2]

[There has been some discussion as to the agency of Mr. Kyle. You must remember Mr. Douglas was operating under a contract partly in his own behalf and partly in their behalf, and if he employed Mr. Kyle to close the matter up, and it is a practical and reasonable thing to do in matters of this kind, to have the services of an attorney, where legal title is to be passed and money to be paid, Mr. Douglas would have a perfect right to do that, in order to close the transaction up in that way. A man's agency is not limited by what his principal may have told him, but by what the apparent scope of his authority is, and by what, under the circumstances, he would reasonably be expected to have a right to do; not by what his principal may have told the agent to do, but by what he does do and by all surrounding circumstances and facts of the case, which the principal ought, with due prudence and care, know that he is doing, or if he does not know he is doing, has opportunity to know. It does not strike me that Mr. Kyle was the agent of the one party more than the other; you may say he was agent for all the parties, as well Mr. Henderson and Mr. Roby as Mr. Douglas. So it all comes to a question of fact for you to determine what this contract was and how it was carried out.

If the plaintiff did all he says he did in good faith, and all he could be expected to do, then these parties are bound by it, and the plaintiff ought to recover a verdict here at your hands for the premises described in the writ. Of course he is to pay what he has already offered to pay, the amount of the purchase money he agreed to pay, or $29.00 an acre for the coal.] [3]

[As to the conversation on January 1, when Mr. Henderson called Mr. Douglas to the telephone and notified him he considered the contract at an end—if you will go back to the contract to the beginning, their undivided two-thirds of the coal was conveyed to Mr. Peters, making him the trustee for Roby and Henderson, and I do not take it that the defendants had a right to rescind this option in that way, abruptly on January 1, by verbal notice, that all rights ceased on the part of Douglas.

It strikes me, if he expected to enforce a specific performance in the payment of the purchase money, in other words, if they expected on that particular day to exact this money from Douglas, they should have taken the steps necessary to see that Mr. Peters, who held the title, was ready to transfer that over and if they let that go by without doing that much on their part, or without giving some protection to Mr. Douglas in that regard, they could not rescind the contract without reasonable notice, that being the rule of contracts in that regard.

Where there are mutual benefits or mutual rights between parties and a time fixed for the performance of an act without either party performing their reasonable parts, neither party could rescind without notice to the other.] [4]

[I instruct you, if you believe this evidence, that the deed was withheld by Mr. Kyle in that way, not through the fault of Mr. Douglas, but through some direction from Mr. Peters as to the distribution of the proceeds. Mr. Douglas' interest is not affected here. The other parties having agreed that he should sell and the conveyance be made to his assigns, his rights are not affected here; and more particularly where there is a top option here at what appears to be a higher price. Of course it would be to the interest of Roby and Henderson that the option should not be executed if they could sell at a higher price. The law would require them to act in good faith, and if Douglas, the plaintiff, prosecuted his rights under the contract in good faith, and was ready to pay for the coal he had bought, and if the evidence is believed by you, he has done all in his power, then these parties should be made to convey the whole premises in consideration of the money he agreed to pay for it.] [5]

[You have heard the testimony of Mr. Kyle as to the conversation that took place between him and Mr. Henderson at Uniontown, Mr. Kyle communicating to Mr. Henderson that Mr. Peters, one of the parties or owners of the coal, was getting $32.00 an acre, and the others perhaps getting $29.00, and that Mr. Henderson expressed dissatisfaction at that. You will recall in that connection, gentlemen of the jury, that the contract between Douglas and Anderson and Peters was an entirely independent contract, not connected with the option of Roby and Henderson with Douglas, and they have no reasonable

or just grounds for complaint on that accord.    As Mr. Henderson promptly admitted on the stand that whatever the contract was between Mr. Peters and the parties he sold to was nothing to him.] [6]

Plaintiff presented these points :

1. If the jury believe from the evidence, that W. J. Kyle, was the agent properly constituted and appointed by all the parties then in interest, to wit : Roby, Henderson, Peters and Douglas, to close the deal for the premises in dispute to James Evans, and that in pursuance of said agency, the said agent had in his possession, prior to December 30, 1900, a deed which was duly executed and acknowledged by the said Peters, in whom was the complete paper title, conveying the same to the said James Evans, for delivery to Mr. Evans on payment of the purchase money ; and if the jury shall further believe from the evidence that prior to December 30, 1900, J. W. Ray, as attorney for the said James Evans, tendered to the said agent, W. J. Kyle, the check of James Evans for the whole amount of the purchase money, due the said Roby and Henderson, and demanded the delivery of the deed, which deed was then in said agent's custody, and that the agent made no objection whatever to the said check, but on the contrary, expressed an entire willingness to accept the same, but refused to deliver the deed, that then the tender so made was sufficient in law and binding and conclusive upon the said Roby, Henderson and Peters.    *Answer :* That proposition is affirmed in connection with the facts in this case if you so find them. [7]

2. The covenants contained in the contract in suit, dated October 6, 1900, are mutual and dependent, and it was as much the duty of the vendors therein to tender a deed for the premises in question, as for the vendee to tender the purchase money, and if the time fixed for the payment of the purchase money, and the delivery of a deed was allowed to pass by without either a tender of the purchase money or a tender of the deed, then the time for performance of the parties became indefinite, and neither could rescind the contract without at least reasonable notice to the other.    *Answer :* Now that proposition is correct in the way in which I have already indicated to you ; that it was incumbent upon these parties if they intended to exact the purchase money at that time, it was his duty to see that the

trustee, who had the paper title, would do what was incumbent on their part in the way of a transfer of their interest. [8]

Defendant presented these points:

2. Under the contract between Roby and Henderson, defendants' vendors, and the plaintiff, if otherwise entitled to recover, plaintiff must show a legal tender of the money due from himself to said Henderson and Roby as a prerequisite to his right to bring this action. *Answer:* That proposition is correct but you must remember what facts are shown here to which I have already called your attention. If the facts are as detailed by the plaintiff, that an agreement was made by which the deed was to pass from Peters to Evans and they knew what was being proposed, then the tender to Mr. Kyle would be a tender to them, because it was carrying out the agreement they entered into. [9]

3. Under the circumstances of this case, unless the said Henderson and Roby authorized the conveyance of their interest by a deed for the whole, made by E. M. Peters to James Evans, to be placed in the hands of W. J. Kyle for delivery, there was no proper or legal tender made. *Answer:* That proposition is correct, but it would not be necessary to find there were specific directions to Mr. Kyle. If there were directions to Mr. Peters, Mr. Kyle, acting as attorney for Mr. Peters, as much as Mr. Douglas, that would bind Roby and Henderson. [10]

4. If the jury believe from the evidence, that W. J. Kyle in holding the deed from E. M. Peters to James Evans, and in treating with Evans' attorney in regard to the delivery thereof, was acting as the agent of E. M. Peters, a tender to him would not be a valid tender, and would not bind the said Henderson and Roby. *Answer:* I cannot concur on that proposition; I think it would. Mr. Peters, acting under written instructions from Roby and Henderson, I think it would be binding on these parties, so far as Douglas' rights in the matter are concerned, he having done nothing to vitiate his contract. [11]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* among others were (1–11) above instructions, quoting them.

*Thomas S. Crago,* for appellants.—In saying to the jury that

it was necessary for Roby and Henderson to do more than they had done, or words to that effect, the court was instructing the jury that Roby and Henderson were in default, and was putting a construction on the contract. with Douglas, which the contract itself does not justify : Dauchy v. Pond, 9 Watts, 49; Jeffrey v. Pennsylvania Mining Co., 204 Pa. 213.

*J. W. Ray*, with him *W. J. Kyle* and *S. M. Smith*, for appellee.—" The tender of a check is good if no objection be made : " McGrath v. Gegner, 77 Md. 331 (26 Atl. Repr. 502) ; Mitchell v. Vermont Copper Min. Co., 67 N. Y. 280; Becker v. Boon, 61 N. Y. 317 ; Jennings v. Mendenhall, 7 Ohio, 257 ; Sloan v. Petrie, 16 Ill. 262 ; Thorn v. San Francisco, 4 Cal. 127 ; Pershing v. Feinberg, 203 Pa. 144.

The authorities are uniformly to the effect that where performance of a contract is prevented by either party thereto no advantage can be taken by the party causing the failure : Vankirk v. Patterson, 201 Pa. 90 ; Chahoon v. Hollenback, 16 S. & R. 425.

Opinion by Mr. Justice Stewart, January 7, 1907:

The legal title to the land that is the subject of this controversy was in one E. M. Peters; the actual ownership was in Peters, Henderson and Roby, who each held a one-third interest. Peters had given an option on his one-third to Henderson, who had assigned it to the plaintiff, John S. Douglas. Subsequently, on October 6, 1906, Douglas procured an option from Henderson and Roby for their interests. It is this latter option that concerns us in the present inquiry, since the action in the court below related only to the interests of Henderson and Roby. By the terms of this option Douglas was to have until the 30th of October following to indicate his acceptance of the land, at the rate of $29.00 per acre, the purchase money to be paid on or before the 30th of December following. Within the period fixed, Douglas gave written notice of his accept-. ance, and the option thereupon became a contract of sale. Peters, holder of the legal title, lived in the state of Ohio ; Henderson, Roby and Douglas resided in Uniontown, Pennsylvania, and the land was in Greene county. While the agreement was for a sale to Douglas, it was in contemplation of the

parties that he would market the property, and find a purchaser at an advanced price for his own advantage. By the common understanding the interests of Henderson and Roby were to pass to the vendee by the conveyance from Peters of the legal title. Douglas assented to this arrangement, was willing to accept such title, and both Henderson and Roby understood and acted upon it. There was no suggestion of separate conveyances or releases from them. Acting upon this understanding, Peters executed a deed for the entire tract to Evans, Douglas' appointee, and forwarded it, in advance of the period fixed in the agreement for the completion of the contract, to W. J. Kyle, Esq., an attorney at law in Waynesburg, with written instructions as follows : " You will deliver the deed to Mr. Evans or Mr. Douglas, as the case may be, upon their payment to me of $2,432.64." This deed was submitted by Mr. Kyle to J. W. Ray, Esq., attorney for Evans, for the latter's examination and approval. On December 30, the last day for payment, Mr. Ray presented to Mr. Kyle, Evans' check for the full amount of the purchase money, and demanded the deed. Mr. Kyle testifies that he knew Evans, knew that the check was perfectly good, that he made no objection to it as insufficient tender, but declined to receive it and deliver the deed, because Peters had instructed him by the letter in which he had forwarded the deed to him, to apply $1,100 of Henderson's share of the money in a way that he was not sure Henderson would approve. His explanation is that he did not care to take the responsibility of receiving Henderson's money, and pay it out to somebody else without directions from Mr. Henderson, and that he therefore declined to deliver the deed. He further testifies that he told Mr. Ray that he would go to Uniontown and try to see Henderson, and if everything was all right he would deliver the deed when he came back. The next day, January 1, Henderson notified Douglas that his option had expired, and because he had not paid the money he could not have the land. Prior to December 30, and subsequent to Douglas' acceptance, Henderson and Roby had given to one Van Dusen, what is called a top option at $32.00 per acre on the same premises ; that is to say, an option that would operate only in case Douglas failed to take the land. Under this latter option, and after Henderson and Roby had declared the

earlier one at an end, the premises were sold to the defendants in the present action. On the trial of the case, it being an ejectment brought by Douglas for the recovery of the two-thirds interest, it was not pretended that the defendants were purchasers without notice of the outstanding contract with Douglas, but it was averred in defendant's abstract of title, that the contract with Douglas was not binding on Henderson and Roby on March 20, 1901, when they conveyed to defendants. The evidence was undisputed that Van Dusen's option which secured the sale to the defendants, was in terms subject to the prior option. The court was entirely correct in charging that the defendants' rights were subordinate to whatever rights Douglas had. It appears that Henderson and Roby had each authorized and directed Peters to settle and adjust their respective shares of the purchase money with Douglas. Upon the trial of the case, and here as well, undue significance was given to this circumstance. In our view of the case it was of little if any importance. The case turns upon the relation of the parties to each other; but that Douglas was authorized to receive from Peters the shares of Henderson and Roby, can in no wise affect the relation in which Kyle stood to all the parties in the transaction; and in any aspect of the case, this latter must be regarded as a controlling consideration. Peters was not simply the trustee of Henderson and Roby for their interests in the land, but he was their agent as well for the transmission of the title in completion of the contract. This much they had committed to Peters; they themselves were not actively to participate at all; Douglas was to look to Peters for his deed. In depositing the deed with Kyle for delivery upon payment of the purchase money, Peters was well within his authority, and was acting for Henderson and Roby as much as for himself. Kyle became Peters' agent and representative; whatever he might do as such agent to the prejudice of those he represented, by no act of his could he prejudice the rights of the party entitled to the deed. When the last day for compliance arrived, by the conduct of the parties, including Henderson and Roby, Douglas was in this position: if he was then to complete his purchase, it could only be through Kyle who held the deed as agent for the vendor; and Kyle had positively refused to deliver the deed under any considerations,

not because of default on the part of Douglas, but because of circumstances which he thought affected himself, promising to deliver it on some subsequent day, if he found everything right. The time admitted of no appeal to the vendors themselves, who resided at a distance. On this exhibit of the facts there can be no dispute as to the law of the case. The default was not on the part of Douglas; he was there at the appointed time, and in readiness to perform. Under the circumstances, this was all that could be required of him. The nature of the transaction, and the object of the parties, show that the covenants of the parties were mutual and dependent. The vendors were to deliver the deed; the vendee to pay the purchase money. As was said in Wagenblast v. McKean, 2 Grant, 393, a party is not bound to part with his money without the consideration upon which it is to be paid. In view of Kyle's positive refusal to deliver the deed on that day, actual tender of the money was not required. "In the case of Rawson v. Johnson, 1 East, 203, the question was fully considered, and the difference between a tender and a readiness to perform recognized and explained. In the case of a tender the money must be offered unconditionally, and the offer is an acknowledgment that it is absolutely due. But in the case of concurrent promises, or where it is payable upon the performance of some act by the opposite party, no such unconditional offer of tender is required. . . . Lord Kenyon's remark that 'in administering justice we must not lose sight of common sense, and that where in such a case, the defendant is unwilling to comply with his contract, it is a useless ceremony to lay the money down and take it up again,' is sound law:" Wagenblast v. McKean, supra. The same doctrine is repeated in Williams v. Bentley et al., 27 Pa. 294. It is there said "Where the debt is due on a contract executed, and the party to whom it is payable is entitled to it without the performance of anything on his part, and the object of the debtor is to discharge himself from an action for it, an actual tender in the legal sense of the term, is necessary unless dispensed with; . . . . but where the acts to be done by the parties are mutual, and to be performed at the same time, it is only necessary for the plaintiff to aver that he was ready and willing to perform his part. In such case the term 'tender' does not express with precision the na-

ture of the act to be performed by the plaintiff to enable him to maintain the action."

While it is difficult to understand the reason assigned by Kyle for his refusal to deliver the deed, his good faith in the matter is not questioned. It does not concern us to inquire into the adequacy of the reason ; that concerns none but Kyle and those for whom he was acting ; his act was their act, and fixed upon them a clear and unmistakable default under the terms of the contract. Manifestly they were not in position on the following day, or any time thereafter except upon notice, to declare the contract at an end. Douglas' rights remained as they were ; nothing that occurred subsequently affected them in any way. He continued to assert his rights under the contract, and nothing more was required of him to preserve his status with respect to it, in view of the defendant's persistent refusal to recognize the contract. To allow Henderson and Roby to take advantage of their own default, to escape from the contract with Douglas, and thereby give effect to another of larger advantage to themselves relating to the same subject-matter, would not only be inequitable but would offend against common honesty. Whether the conduct of Kyle in connection with the deed be regarded as constituting a default by the vendors, or as an agreement between him and the vendee for an enlargement of the time for the completion of the contract, no particular date being fixed, the result would be the same. In either case the rights of the vendee would remain unaffected.

The judgment is affirmed.