C. Burns Craig, Respondent, Appellant, *v.* Edward A. Pierce and Others, Copartners Doing Business under the Firm Name and Style of E. A. Pierce & Co., Appellants, Respondents.

First Department, December 26, 1930.

*James C. Webster* of counsel [*John G. Poore* with him on the brief; *Poore & Webster*, attorneys], for the plaintiff.

*Ira Skutch* of counsel [*Benjamin F. Feiner* with him on the brief; *Feiner & Skutch*, attorneys], for the defendants.

Martin, J. The plaintiff brought this action against a firm of stockbrokers to recover the sum of $38,335. He alleges that

the defendants were carrying for his account 1,500 bales of cotton for December delivery; that plaintiff ordered the defendants to sell the cotton at twenty-four and six-tenths cents per pound, if, after the publication of the governmental report on September 8, 1927, the price rose above that figure; that the price of December cotton exceeded twenty-four and six-tenths cents per pound after the publication of the governmental report; that defendants failed to sell the cotton at such price; that subsequently the defendants sold the cotton at varying prices, which resulted in a difference of $38,335, the amount claimed by the plaintiff.

The answer admits that the cotton could have been sold on September 8, 1927, at twenty-four and six-tenths cents per pound, but denies that an order was given for the sale thereof at said price, and further sets up two separate and affirmative defenses, the first alleging that the order given by the plaintiff was discretionary in character; that the plaintiff was promptly notified on the 8th day of September, 1927, that the cotton had not been sold, and that the plaintiff thereafter expressly authorized, ratified and approved the action of the defendants in having failed to sell the cotton and in continuing to hold same for plaintiff's account.

The second separate affirmative defense in mitigation of damages alleges that the plaintiff, although notified that the cotton had not been sold on September 8, 1927, failed to repudiate and failed and refused to sell the cotton although it could have been sold immediately after that date without substantial loss, and that by reason thereof the damages sustained by the plaintiff, if any, were limited to the difference in market value of the cotton as of the 8th day of September, 1927, and a reasonable time thereafter.

The court submitted to the jury the interpretation of the letter relied upon by the plaintiff as the basis for his claim that an order had been given for the sale of the cotton and also the question whether the plaintiff had ratified the defendants' failure to sell. The jury returned a verdict in favor of the plaintiff for the sum of $10,000 which the court refused to set aside, stating that, if error existed, it would be better to establish the same by an appeal.

The plaintiff's entire claim is based upon a letter dated September 5, 1927, written by him to the defendants immediately prior to plaintiff's departure on a short vacation, and which letter plaintiff claims constitutes the selling order, for the violation of which this action was brought and a recovery had. This letter is in part as follows:

*" Spt 5 27*

" Dear Mr. WHITTLESEY —

" * * * As to cotton, my idea would be as follows:

" If there is a rise so that between 10:45 & 11 A. M. Thurs. Dec. price is above 23.60 buy 500 more.

" When the report comes out if it is interpreted as bearish dump all. If bullish and it rises the 200 pt. limit and that makes the price above 24.60 or around that, sell all. But be guided by Mr. Mitchell if in doubt. *He knows the cotton game. Maybe he would prefer to sell half.*

" I shall try to get newspapers and see the closing, daily, but may not be able to do so in certain small places. We expect to get out Cape Cod. May wire some destination but uncertain now. Use your own judgment on Wabash.

" After we sell cotton I would like to get 100 new Gen. Motors Com. if it hasn't gone too far above present price.

" I shall try to let you know where to wire me Thursday the 8th."
(Italics ours.)

This letter concededly was received by Mr. Whittlesey, one of the customers' men of the defendant firm, on September sixth, who started to enter the order for the sale of the cotton on September eighth, when he noticed the reference to Mr. Mitchell, one of the members of the defendants' firm, following which he turned the letter over to Mr. Pierce, the head of defendants' firm, for his attention, who in turn caused the contents of the letter to be communicated to Mr. Mitchell, who was on the floor of the Cotton Exchange. Mr. Mitchell, considering the letter as vesting in him the discretionary right to sell, and being, as he says, extremely bullish on September eighth, failed to sell the cotton, although, after the publication of the government report referred to therein, cotton sold at twenty-four and seventy-two one-hundredths and could have been sold at or about that figure.

On September eighth the defendants communicated with the plaintiff three times, advising him of price conditions and the condition of the market, and that Mr. Mitchell had not sold, but would do so when " he thinks ripe." It is conceded that the plaintiff received these messages on September eighth and plaintiff continued in almost daily telegraphic communication with defendants until his return to the city on September nineteenth. No complaint was made by plaintiff in his wires regarding defendants' failure to sell. On the contrary, his response to the information that Mr. Mitchell had not sold on September eighth was a telegraphic *inquiry by him on September tenth as to whether Mitchell*

*would advise further purchases of cotton if the price exceeded twenty-
five cents.* In addition to these telegraphic communications the
plaintiff wrote to the defendants on September twelfth stating
*that evidently his letter written prior to departure was not very clear;*
that the idea he intended to convey was to sell his cotton at twenty-
four and six-tenths immediately on opening after the bureau report,
" Or if Mr. Mitchell tho't better to sell half," the letter ending
with the statements,

" Well, misunderstandings arise in the best of families.

" Have had good weather & enjoyable time thus far."

The defendants contend that the letter of September fifth did
not constitute a definite unconditional selling order but vested
the defendants with discretionary authority the exercise of which
affords no basis for any cause of action by the plaintiff.

The first proposition in this case which requires consideration
is the fact that the court allowed the jury to construe a writing
which the plaintiff claims was an order to sell and which the defend-
ants contend was nothing of the kind.

The construction of this letter was for the court and not for
the jury.

" The liability of a broker depends on the particular terms of
his instructions, the construction of which, if in writing, is a question
for the court." (9 C. J. 529.) (See, also, *Davis* v. *Gwynne,* 57
N. Y. 676; *Dwight* v. *Germania Life Ins. Co.,* 103 id. 341; *Milbank*
v. *Dennistoun,* 21 id. 386.)

On the other hand, if the writing was ambiguous, the plaintiff
is not in a position to complain if it was not understood by his
brokers. The plaintiff himself had some difficulty in explaining
his letter with reference to this so-called order.

The contention of the plaintiff was that everything after the
words " sell all " was superfluous, and that there was no discretion
given to Mr. Mitchell if the cotton went to twenty-four and six-
tenths, but in a letter dated September 22, 1927, he said: " On
Spt. 8, I was advised that ' Mr. Mitchell will sell when he thinks
ripe.' I have not attempted to suggest anything in regard to the
account since I advised selling *all or at least half* at 24.60 which
was entirely possible." (Italics ours.)

If everything after the words " sell all " in his order was super-
fluous he there construed the part that came after the words " sell
all " as an order to sell *at least one-half* at twenty-four and six-tenths.

We are of the opinion that the letter upon which the plaintiff
relies was intended to be an order to Mr. Mitchell giving him
full discretion to use his own judgment with reference to the trans-
action in question.

The best index to what plaintiff thought the letter intended is to be found in the correspondence, which clearly shows that before the plaintiff brought this action he was of the opinion that the letter was not a direction to sell all at twenty-four and six-tenths. The plaintiff was compelled to admit that there might be a misunderstanding about the letter. If he could not understand it himself, as evidenced by his subsequent correspondence, he could not expect others to do so.

In the correspondence the plaintiff concedes there was an unfortunate mistake, that his letter was capable of being misinterpreted, and apparently he then interpreted it quite differently from the manner in which he now wishes it to be interpreted.

In one letter he says:

" Received *Sept.* 22, 1927.

" GENTLEMEN.— My ideas concerning the handling of my cotton account were so completely disregarded you will kindly confer with those in charge of it.

" On Spt. 8, I was advised that ' Mr. Mitchell will sell when he thinks ripe.' I have not attempted to suggest anything in regard to the account since I advised selling all or at least half at 24.60, which was entirely possible."

In a letter dated October 15, 1927, plaintiff wrote in part as follows:

" E A PIERCE & Co

" GENTLEMEN.—

" * * * Here was a man,— a business acquaintance of long standing prompted by the best motives doing what he mistakenly tho't was my desire. Under such circumstances, it would be, in my opinion, a hard bit of human conduct for me to demand that you credit my cotton account as sold out at 24.60 as ordered. Yet that is what ' sound and proper business policy, as is customary ' would require."

In the letter which the plaintiff now says was an order to sell, he says: " As to cotton, my idea would be as follows:
" * * * But be guided by Mr. Mitchell if in doubt. He knows the cotton game. Maybe he would prefer to sell half."

This, he says, was his idea only, and that cannot be considered as an order to sell.

In a letter dated October 28, 1927, the plaintiff clearly shows a ratification of the acts of the defendants: " You are quite right, — I did not stress the matter of the mistake until you called on me for margin several times. I believe I responded twice, preferring to do this rather than to get into controversy, and still I did not

express to you my position. I can see now it would have been better to have been quite frank immediately. I kept silent for a reason that may seem silly and inadequate to you, but that would be the result of a different psychological approach,— I did not want to hurt Mr. Mitchell's feelings, because he had tried to do me a good turn and I thought the commodity would rise rapidly and I could dispose of it at the same price without any mention of the matter."

In a latter dated October first, the plaintiff wrote: " I believe that it was an honest mistake and that's the end of it."

On September 8, 1927, or the following day, the plaintiff knew that this cotton had not been sold at twenty-four and six-tenths and he could have then sold it and thus prevented any substantial loss by giving a definite order to sell but he failed to do so. The correspondence shows he gambled with the market expecting it to rise and when he found that it did not do so, he sought to place the loss on his brokers by means of this action, first contending that his order was to sell all and afterwards contending that it was to sell one-half.

It is quite evident from the correspondence between the parties that the plaintiff lulled the defendants into a sense of security by failing to order the cotton sold after the eighth day of September, and by correspondence which intimated that an honest mistake had been made and for that reason no advantage would be taken by the plaintiff. One who takes chances with the market in the manner shown by the correspondence in this case should accept the result and not wait until it is too late for any one to remedy the condition and then attempt to place the loss on others. We are of the opinion that the judgment is wrong and should be reversed.

The judgment should be reversed, with costs to the defendants, and the complaint dismissed, with costs. The order denying plaintiff's motion for a new trial and that the clerk be directed to add interest to the verdict, should be affirmed.

Dowling, P. J., Merrell, O'Malley and Sherman, JJ., concur.

Judgment reversed, with costs to the defendants, and the complaint dismissed, with costs. Order denying plaintiff's motion for a new trial and that the clerk be directed to add interest to the verdict, affirmed.