Sisney *v.* Diffenderffer et al., Appellants.

338

Argued April 27, 1936. Before KEPHART, C. J., SCHAF-
FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Joseph B. Winokur,* of *Loewenstein & Winokur,* for
appellants.

*Arthur P. Bretherick,* with him *Richard H. Hollen-
berg,* for appellee.

OPINION BY MR. JUSTICE LINN, June 26, 1936:

The suit is for breach of a contract of agency. The
defendants are stockbrokers. The plaintiff had been

buying and selling on margin since 1919, and, July 24, 1929, in writing, requested defendants to take over an account she then had with another broker by accepting "the securities they are carrying in my account and pay them the amount of my debit balance." The state of the account transferred appeared in a letter from the retiring broker.[1] On the same day she signed a written contract prepared by defendants to govern their relations. Among other terms, it states "Only actual purchases or sales are contemplated, . . . and you and your correspondents are hereby constituted agents of the Undersigned for the purpose of consummating all such transactions, and are authorized to make such advances and expend such moneys as may be required in respect thereof;

"All securities or commodities, or contracts for commodities, now held or hereafter purchased by you for, or now or hereafter deposited with you by, the Undersigned, are to be held by you as security for the payment of all liabilities of the Undersigned to you, however and whenever arising, . . .

"You may from time to time demand additional security or that the account be immediately taken up and paid, and all amounts advanced and other balances due, with interest at the current rate, and all commissions fixed by the regulations and usages of the exchange or market where orders are executed shall be due and payable upon demand; . . .

"Upon failure of the Undersigned to comply with any of the provisions hereof, or whenever deemed necessary for your protection, you are hereby authorized and empowered to sell, assign and deliver all or any

---

[1] "We also wish to advise you we have this day delivered to Messrs. Diffenderffer & Company for your account, and in accordance with your instructions, 80 shares Fiat Warrants, 200 (in pencil) 100, shares E. G. Budd, 100 shares Phila. & Reading Coal & Iron, and 20 shares Anaconda Copper, and have received from them the $2,872.22, in settlement of the balance due us."

part of the securities, commodities or contracts for commodities pledged hereunder upon any exchange or market or at any public or private sale at your option, . . .

"All statements of account rendered the Undersigned from time to time shall be taken to be correct unless written notice to the contrary is given you within ten days after the receipt thereof";

She averred and proved, as the verdict establishes, that on September 3, 1929, the stocks held for her account had a market value of $10,955.00 against which she owed $5,695.24, and, on that day, she instructed defendants to sell her stocks; that they failed to do so, and, after a decline in the market and her refusal to furnish additional collateral, they sold the stocks with loss to her of $5,259.76 with interest. This was the second trial; the first resulted in a verdict of $5,592.72; the second, $5,998.14. Twice, then, a jury has accepted the evidence produced on plaintiff's behalf as a true account of the transactions.

Defendants admit the written contract but deny receiving the order of September 3d to sell, they also deny the authority of their employe to receive the order to sell and also their responsibility for his neglect to execute it; they rely on certain transactions occurring after the alleged breach, as acquiescence in or ratification of the failure to comply with the order; some question is also made of the measure of damages.

Defendants had in their employ a man named Rogers, described in the evidence as a customers' man and, in the pleadings, read in evidence, as one "who was only authorized to take orders for the purchase and sale of securities." Plaintiff testified that she dealt with defendants through Rogers; that she instructed him on September 3d to sell all her stocks and close the account; that he failed to do so and, when complained to about it, said "that the market was not going down and I would not lose my money." Afterward, as the market fell, defendants sent calls for margin, on the

receipt of which she called Rogers on the telephone and told him "that if he had sold all my stock on September 3d there would be no occasion to call for margin, that I had no money to put up for margin, and now what was he going to do about it? He told me to throw it [the margin call] in the waste paper basket." Subsequent margin calls were treated in the same way. After defendants notified her that they had sold the stocks in default of margin, she wrote them, November 18, 1929, in acknowledgment of their notice, that she did "not confirm the sale of said stock as I had previously notified your firm to sell these stocks at a much higher price and if my orders had been complied with you could have sold the stocks as per my orders . . . " She then also called at defendants' place of business and presented her claim for loss to one of the defendants, complaining that her instructions were not carried out; Rogers, who was present, denied that she gave the instructions to sell. The evidence was for the jury *(Nanty-Glo Borough v. American Surety Co.*, 309 Pa. 236, 163 A. 523) and we must accept the verdict.

The plaintiff, as principal, had the right to select what should be purchased for her account and what should be sold;[2] so long as the account was amply margined, defendants could not refuse to sell, because the right to refuse, in such contingency, was not reserved.[3] On September 3d, when the order was given, defendants could have sold the stocks in plaintiff's account, paid themselves, with a large balance to plaintiff's credit remaining. Between September 3d when the order was

---

[2] The learned trial judge so charged the jury and the instruction is not complained of.

[3] "A broker is but an agent, and is bound to follow the directions of his principal, or give notice that he declines to continue the agency. In the absence of a special agreement to the contrary it is the principal's judgment, and not his, that is to control in the purchase and sale of stocks." *Galigher v. Jones*, 129 U. S. 193, 198. See also *Richardson v. Shaw*, 209 U. S. 365, 377.

given, and the time in November when defendants closed the account, they sent to her a number of notices that they had made other purchases for her, and four requests for additional margin. Her testimony is that in each instance she immediately telephoned Rogers, with whom alone she had dealt, that she had not ordered the purchase to be made, that it was without her authority, and that she declined to ratify it, and that he replied to her that "stocks would go up and I only had a paper loss" etc. What she did with the margin requests has already been stated above.

Appellants contend that as plaintiff admits receipt of the notices of sales, and as she did not repudiate them in writing, she is bound by them, and, in support of their position, quote from the written contract as follows: "All statements of account rendered the Undersigned from time to time shall be taken to be correct unless written notice to the contrary is given you within ten days after the receipt thereof." Without now determining whether the notices of purchase were statements of account within the meaning of the parties, but considering them as within the words,[4] for the purposes of this case, it is clear that the provision can afford no defense to the breach of contract declared on, to wit: the failure of the agent on September 3d (before any of the purchases were made) to comply with the principal's instructions to sell. If the provision be regarded as a promise[5] by plaintiff to do something rather than as a condition subsequent, defendants fail by the operation of the rule that any material default in performance by them discharges the other party to the contract.[6] Regarded as creating a condition subsequent,

---

[4] At the end of September and at the end of October she received an account of the purchases alleged to have been made for her.

[5] *Restatement, Contracts,* section 260.

[6] *Restatement, Contracts,* sections 274, 276; *Lane v. Penn Glass-Sand Co.,* 172 Pa. 252, 33 A. 570; *Fink's Est.,* 157 Pa. 292, 27 A. 724; *Hurt v. Fuller Canneries Co.,* 269 Pa. 85, 112 A. 148.

as we think it should be, it would appear that the parties had provided that defendants should be advised, in the way agreed upon, whether their account with plaintiff was correct or not. It was agreed that the account should be taken as correct unless plaintiff gave written notice to the contrary. Now the record shows that before the notices were sent, defendants had already defaulted; their breach had put at large the relations of the parties; there was nothing, if plaintiff stood on the default, on which defendants could act to which the condition subsequent could apply; plaintiff had in every case immediately refused to ratify what had been done for her account without authority. In this view of the provision relied on, defendants are confronted with another rule, applying the same general principle, and likewise destroying the proposed defense. The rule appears in the *Restatement, Contracts,* section 306, as follows: "Where failure of a party to a contract to perform a condition or a promise is induced by a manifestation to him by the other party that he cannot or will not substantially perform his own promise . . . the duty of such other party becomes independent of performance of the condition or promise." Thus a disclaimer of liability by an insurer dispenses with the necessity of filing proof of loss: *Roe v. Ins. Co.,* 149 Pa. 94, 23 A. 718; *Curran v. Nat. Life Ins. Co.,* 251 Pa. 420, 96 A. 1041; *Fedas v. Ins. Co. of Pa.,* 300 Pa. 555, 151 A. 285; an agreement to support when "needed and demanded" is broken without demand where promisor gave notice of intention to cease: *Ramsey v. Ramsey,* 15 Pa. Superior Ct. 214; a vendor's refusal to perform excuses tender by the vendee as a condition to a right of action: *Williams v. Bentley,* 27 Pa. 294; *Douglas v. Hustead,* 216 Pa. 292, 65 A. 670. Plaintiff requested defendants, through their agent who was authorized to receive the order, to sell her stocks; when it appeared that defendants would not execute the order, it was no longer incumbent upon her to follow the terms of the

agreement repudiated by them, and give a written notice which the parties had provided should be given while the contract remained in force. This conclusion of course is predicated upon the proposition that the order given to Rogers was an order to the defendants. As it is agreed that it was Rogers's duty to receive plaintiff's order to sell, the order to him was an order to defendants. They cannot be heard to say that they did not receive the order when the agent they designated to receive it for them did receive it, as the jury found. It is matter of no consequence that her instructions were to sell all the securities and that the effect would have been to close the account. Rogers had as much authority to receive instructions to sell all as to sell any one of them. The question raised as to his authority is not, as defendants suggest, like the question considered in *Bosak v. Parrish,* 252 N. Y. 212, 169 N. E. 280, in which it was held that a customers' man had no authority[7] "to accept in the firm's [his employer's] behalf a notice of revocation of a discretionary agency," created by a letter of attorney and running to the firm, not to the customers' man. All that defendants, through Rogers, were asked to do in this case, was to sell securities, and that, by their contract, they had agreed to do. Their argument that the purchases made after the breach, with the notices to her, kept the contract alive, falls with the verdict, which must be taken to establish that each time she promptly repudiated the purchases and refused to excuse the breach and have the contract reinstated.

If, without her instructions, Rogers made purchases on her account and notified her of them, she did all that was necessary when she notified Rogers that she had not given him such authority. In notifying him, that she had not given orders to buy and that she declined

---

[7] Cf. *Teitelbaum v. Halle,* 237 App. Div. 164, 261 N. Y. S. 104; *Wolff v. Lockwood,* 70 App. Div. 569, 75 N. Y. S. 605.

to ratify, she was in effect giving notice to the defendants because Rogers was authorized by them to receive orders and therefore necessarily was authorized to receive notice that they had made a mistake in the purchase, in other words, a request that it be corrected, or that the unauthorized purchase would not be ratified. There is nothing in the record to take this case out of the general rule that notice to the agent is notice to the principal, and to bring it within the cases holding that when an agent commits a fraud in his own and against the interest of his principal, he will not be presumed to have informed his principal. See *Gunster v. Scranton Illuminating etc. Co.*, 181 Pa. 327, 37 A. 550; *United Security etc. Co. v. Central Nat'l Bank*, 185 Pa. 586, 40 A. 97; *Restatement, Agency,* sections 268, 271; *Evans v. Metropolitan Life Ins. Co.*, 294 Pa. 406, 144 A. 294; *Thomas v. Employers Liability Assurance Corp.*, 284 Pa. 129, 130 A. 322; *Restatement, Agency,* section 282 (2).

As the plaintiff, by the verdict, has received only the difference between the value of the stocks on the day that they should have been sold, and the amount of her debt with interest, she has received only compensation. To that she was entitled; the evidence in the record furnishes no basis for any other calculation.

Appellants have an assignment of error to the refusal of a request for charge, made orally after the charge had been completed, asking that the jury be instructed "that they can find that the transactions of September 28th and November 6th were a ratification by the plaintiff of her account." The court correctly refused that instruction. It covered only part of the evidence on the subject and for that reason an affirmation would have been misleading; but more than that, the transaction of November 6th, referred to in the request, had to do with a loan of $100 made to the plaintiff by Rogers, personally, and his taking as security 80 Fiat Warrants out of the stocks in the account. He still held them at

the time of the trial. We can see no basis for the suggestion that this personal transaction reinstated the contract in the sense that it released the effects of defendant's breach of contract.

Judgment affirmed.